## MORGAN *vs.* SMITH, WYKOFF & NICHOLL.

[DETINUE FOR SLAVE—DELIVERY OF BILL OF SALE.]

1. *Title passes by delivery of bill of sale.*—The delivery of a bill of sale to the purchaser of a slave, of itself, passes the title to him ; and the vendor, when sued by a sub-purchaser, cannot avoid the effect of it, by proof of a parol agreement that the delivery was conditional, and that the title was to revest in him in the event the purchaser failed to give his note, with a specified surety, for the purchase money. (RICE, C. J., *dissenting,* held, that the question of delivery *vel non* involved the consideration of the parties' intention, which was a question of fact for the determination of the jury, and which the evidence did not authorize the court to assume without hypothesis; and that contemporaneous oral declarations of intention, relating to the execution, as contra-distinguished from the construction of the instrument, were admissible as part of the *res gestœ.*)

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. ANDREW B. MOORE.

THIS action was brought by the appellees, suing as partners, against Isaac C. Morgan, to recover a negro man, named Phil, together with damages for his detention.   The defendant pleaded, " that he is not guilty of the matter alleged in the complaint, and that the slave sued for is his property."

The bill of exceptions is as follows :

" On the trial, the plaintiffs introduced evidence, showing that the slave sued for was in their possession a short time before the bringing of this suit, and that they obtained said slave from one Barnabas Strickland, who sold him to them, and executed to them a bill of sale, of which the following is a copy : ' Received, Dallas county, Ala., May 7, 1852, from

Messrs. Smith, Wickoff & Nicholl, $800, payment in full for my negro man, named Phil, aged about thirty years. The said negro I warrant sound in body and mind, a slave for life, and free from all claim or claims whatever,' (signed by said Strickland.) The plaintiffs proved, also, that said Strickland, at the time of the execution of said bill of sale, was indebted to them on account; that the account which they had against him was credited, at the time of the execution of the bill of sale, with the sum of $800; that said slave was received by them in payment of $800 of said Strickland's indebtedness to them; that said Strickland, at the time he sold said slave to them, had said slave in his possession, and also a bill of sale, signed by the defendant, conveying said slave to said Strickland unconditionally; that said bill of sale, signed by the defendant, was dated a short time before said slave was sold by Strickland to plaintiffs, and was delivered by him to them. It was admitted that said slave was in the possession of the defendant at the time this suit was brought. The plaintiffs then proved the value of said slave, and the value of his annual hire."

The defendant offered in evidence the deposition of said Strickland, who testified as follows: "Witness made a contract with defendant about said slave about the first of May, 1852; and the contract was as follows: Witness bought said slave from defendant, and was to give defendant $800 for him, to become due on the first of January, 1852, with John A. Jones for security for the payment of said sum. The terms upon which defendant agreed to sell witness said slave, are these: That if witness would give him $800, with said John A. Jones for security for the payment of the same, witness could have the slave. But witness did not comply with the terms upon which defendant agreed to sell him said slave; for said Jones, after promising witness to stand his security to defendant for said slave, afterwards refused to do so. Witness received from defendant a bill of sale for said slave, with the understanding and agreement above expressed. The bill of sale was the only paper that passed between him and defendant, in relation to said slave. It contained what is generally contained in a common bill of sale to negroes; and he does not recollect its contents any further. The

defendant delivered said slave to witness, upon the understanding that the contract above stated was to be fulfilled by witness. Witness sold said slave, to the best of his knowledge, on the same day he received him from defendant." (Answers to cross-interrogaties:) "Witness delivered said slave to R. R. Nicholl, one of the plaintiffs, with the marginal price of $800, to be sold by them, and, if said slave brought more than that sum, it was to be allowed or paid to witness, on the claim which plaintiffs then held against him. No final settlement has been had between the parties in said transaction. Witness had the possession and control of the slave at the time of said transaction. Witness had said slave from defendant, with his knowledge and consent, under the terms above expressed. Defendant made witness a bill of sale for said slave, as above stated; and witness, as well as he can recollect, either transferred or delivered the same to said R. R. Nicholl. Witness also made to said R. R. Nicholl, or to the said firm, a bill of sale to said slave."

"It was admitted that said Strickland had never paid defendant anything for said slave."

"This was all the testimony in the case; and upon these facts, the court charged the jury, that if they believed the whole evidence, they must find for the plaintiffs, and assess the value of the slave, and of his hire from the commencement of the suit"; to which charge the defendant excepted.

The defendant requested the court to instruct the jury, "That if they believed from the evidence that the defendant was the owner of the slave sued for, and, while he was such owner, agreed to sell said slave to Strickland, at the price of $800, to be paid on the first of January, 1853; and that Strickland was to give one John A. Jones as surety for the payment of the purchase money; and that said slave, with the bill of sale made by defendant to Strickland, was delivered to Strickland on those conditions; and that Strickland did not give said Jones as surety for the payment of the money, and never has paid the purchase money in any way,—then Strickland did not acquire any title to said slave; and if he afterwards sold said slave to plaintiffs, in payment of a debt due by him to them, then the defendant has the better title to

said slave." The court refused to give this charge, and the defendant excepted.

The charge given, and the refusal to give the charge asked, are now assigned as error.

GOLDTHWAITE & SEMPLE, for the appellant.

WATTS, JUDGE & JACKSON, *contra.*

WALKER, J.—The bill of sale, delivered by Morgan to Strickland, was, in its effect, a conveyance of title.—Bush v. Bradford, 15 Ala. 317. The delivery of the bill of sale to the vendee has, of itself, the legal effect of transferring the title from the vendor to the vendee. The vendor says by the bill of sale, when delivered to the purchaser, I transfer the title. The law will not permit him to say, that there was a parol agreement, by which the bill of sale delivered to the purchaser was not to be effectual, unless the purchaser should give him a note for the purchase money with a certain surety. A deed cannot be delivered to the *grantee* as an escrow.— Firemen's Insurance Company v. McMillan, at this term ; Thoroughgood's case, 5 Coke, 136 ; Granis v. Tucker, 10 S. & M. 1 ; Hey v. Schooley, Longworth, *et al.*, 7 Ohio, 373 ; Moss v. Riddle & Co., 5 Cranch, 351 ; Pawling v. United States, 4 Cranch, 219 ; Fairbanks v. Metcalf, 8 Mass. 230 ; Bibb v. Reid & Hoyt, 3 Ala. 88 ; Robertson v. Coker, 11 Ala. 466.

We do not intend to decide, that it may not be shown that an instrument, although placed in the possession of the obligee, was not so placed with the intention of delivery at all ; as was held in Hopper v. Eiland, 21 Ala. 714. But, while parol proof may be admissible to show that there was really no delivery, it cannot be received, consistently either with principle or authority, to show that a delivery made to the grantee was upon a condition, not to be effectual except in a certain contingency. There is no reason for a distinction between conveyances not under seal, and those under seal. They alike take effect by delivery, and there can be no reason in visiting a different rule upon them as to the question of escrow.—See the authorities cited below : Prime v. Yates, 3 Brevard, 559 ; Chitty on Bills, 195 ; Chamberlain v. Hopps

& Hopps, 8 Verm. 96 ; Story on Bills, 224, § 203 ; Alsop v. Swathal, 7 Conn. 500 ; Brind v. Hampshire, 1 M. & W. 365 ; Marston v. Allen, 8 M. & W. 494.

It was not, in our judgment, permissible to vary the effect of the delivery of the bill of sale to the purchaser, by showing that it, together with the slave sold, was delivered upon the condition, that the purchaser should give a note with a specified surety for the purchase money. We are not at all certain that the proof conduced to show that there was any condition about the delivery ; but it is unnecessary to consider that question, as the point already decided is conclusive.—See Evans v. Gibbs, 6 Humph. 405. If it be conceded, that the evidence conduces to show a delivery of the bill of sale, upon the condition that it should become void, and the title should . revest in the seller, in the event of a failure to give the note with the prescribed security, it would not avail the appellant, because it would be incompetent to incorporate a parol defeasance of that kind upon a written conveyance.

The judgment of the court below is affirmed.

RICE, C. J.—The question of the delivery of an instrument is one involving the consideration of both acts and motives. The consent of the maker is an essential ingredient in the constitution of a good or complete delivery. And though the instrument may have been handed over to the grantee, it may be shown that he obtained it fraudulently, or in an improper manner, or that for want of the consent of the grantor the handing over of the instrument did not amount to a good delivery. The oral declarations of intention, connected with the handing over, may come in as part of the *res gestæ*. All facts relating to *the execution*, as distinguished from *the construction* of the instrument, may, in general, be shown, notwithstanding anything appearing on the face of the instrument.—3 Cowen & Hill's Notes to Phil. Ev. (edition of 1839), 1282, 1388, 1450, 1453, 1454 ; Clarke v. Gifford, 10 Wend. R. 310.

Where the legal effect of the acts of a party depends upon his intention, and there is the slightest conflict in the evidence as to that intention, that intention is a question of fact for the jury, and cannot be determined by the court, or taken by it

from the jury.—Powis v. Smith, 5 Barn. & Ald. 850 ; Oliver v. The State, 17 Ala. Rep. 587; Henry v. Patrick, 1 Dev. & Batt. 358 ; Allison v. Matthieu, 3 Johns. R. 235.

The evidence in this case, as to the intention of Morgan in handing the instrument and slave over to Strickland, is not entirely free from conflict; and it was erroneous, therefore, for the court to withdraw from the jury the determination of the question of his intention, and to give the sweeping charge which was given. Such a charge ought never to be given, when there is any conflict in the evidence upon any material question.—Arnold v. The State, at this term, and cases there cited.

Regarding the charge of the court below as an invasion of the province of the jury, I cannot sanction it, or consent to affirm the judgment.