# Shealy & Finn *v.* Edwards.

*Trespass de bonis asportatis.*

1. *Contract of sale of personal property; when title passes.*—While it may be true, as a general proposition, that, if any thing remains to be done by either party to a contract for the sale of personal property before delivery, to determine the price, quantity or identity of the thing sold, the title does not vest in the purchaser, and the contract is merely executory, this principle must be limited to those cases in which the

[Shealy & Finn v. Edwards.]

evidence does not show an intention to make the sale absolute and complete, without any regard to the performance of these usual prerequisites, at least as to price and measurement.

2. *Same; title may pass without fixing an absolute price.*—If the goods are sufficiently identified, a complete sale of them may be made without fixing an absolute price, if such be the clear intention of the parties, as legally evinced by the circumstances attending the transaction.

3. *Same; effect of delivery.*—In determining whether the parties to a contract for the sale of personal property intended that the title should pass, so as to complete the sale, the actual delivery of the goods is of the greatest importance; and if there be accompanying declarations, showing an intention that the property should pass to the vendee immediately, and not at some future time, the fact of delivery, as evidence of intention, becomes manifestly the most cogent of all legal proofs, when the good faith of the transaction is not impugned.

4. *Same; rule as to price in executory and executed contracts.*—While the rule as to price in executory contracts of sale of personal property requires that it must be certain, or capable of being made certain, a different principle prevails where the contract of sale is complete and executed. In the latter class of contracts, where the seller, whether by actual delivery, or other like unequivocal act, intentionally passes the property in specific goods to the purchaser, without fixing the price, the law leaves the price to be adjusted by the agreement of the parties, or, in case they fail to agree, to be determined by the verdict of a jury.

5. *Same; when an executed contract.*—Where the owner of a stock of goods, the greater part of which was new, agreed to sell the entire stock, the new goods at invoice prices, and the old goods at such price as might be agreed on at a certain time in the near future, the purchaser to execute his notes for $2750, the estimated price of the stock, and, if that amount was insufficient to pay for the new goods at invoice prices, and the old goods at such price as they might agree on, then the purchaser should execute his note for an additional sum to cover the difference; but if it should be found that $2750 was more than the value of the new goods at invoice prices, and of the old goods at the price to be agreed on, then the purchaser should have a credit on his notes for the excess; and the notes were afterwards, on the same day, executed and the goods delivered, and the purchaser remained in possession an entire day thereafter, and was engaged in selling the goods on his own account; and afterwards, but before the time had expired for agreeing upon the price of the old goods, and for ascertaining the invoice prices of the new goods, a creditor of the seller caused an attachment to be levied on the goods,—*held,* that these facts constituted an executed contract of sale, passing the title to the goods, and they were not subject to levy under the attachment.

APPEAL from Talladega Circuit Court.

Tried before Hon. LE ROY F. Box.

This was a suit in trespass, brought by Shealy & Finn against Joseph A. Edwards, Joseph Hardie and others, to recover damages for the seizure and asportation of certain goods, wares and merchandise, and was commenced on 19th January, 1882. The defendants joined in a plea of not guilty, and the defendant Edwards filed a special plea, alleging, in substance, that the goods, wares and merchandise described in the complaint were levied on by him as sheriff of Talladega county under an attachment issued out of the circuit court of said

county at the suit of Joseph Hardie against Terrell & Vincent; and that at the time of said levy said chattels were the property of the defendants in attachment. Issue was joined on the plea of not guilty, and the plaintiffs replied to the special plea, denying that the chattels were the property of Terrell & Vincent, and alleging that they then belonged to the plaintiffs. Upon the issues thus made up the cause was tried, the trial resulting in a verdict and judgment for the defendants.

The evidence introduced on the trial tended to show the following facts:. On 9th December, 1881, the stock of goods in controversy belonged to Terrell & Vincent, partners engaged in the mercantile business in the town of Talladega, who, on that day, made an offer to sell the same to the plaintiffs. "Said offer was as follows: Shealy & Finn were to pay Terrell & Vincent the sum of $2750 for the goods, and to execute their note or notes for that amount, payable to Terrell & Vincent or bearer twelve months from date, without interest until they should become due and payable; that said stock of goods consisted of three lots or kinds, viz: New goods recently purchased, the goods that Terrell & Vincent had purchased of Jackson Brothers when they bought them out about the beginning of the year, and some goods that Terrell brought with him from a store that he had in the country, when he moved to town; that nearly all the goods (at least four-fifths) were new, and were offered at invoice prices, and that an invoice of them had been partly made; that no agreement as to the price of the old goods bought of Jackson Brothers, or of the goods brought by Terrell from the country, was made, but the price for them should be agreed on the following Monday; and if, when that should be done, it was found that $2750 was not enough to pay for the new goods at invoice prices, and the old goods at such price as might be agreed on, then Shealy & Finn were to execute their notes for as much more than $2750 as would make that difference good; and, on the contrary, if it should be found that $2750 was more than the worth of the new goods at invoice prices, and the agreed price of the old goods, then they were to have a credit on their notes for a sum equal to such difference." Late in the afternoon of that day the plaintiffs, after consultation with each other, and on examination of the goods, agreed to take the goods on the terms proposed, the trade to go into effect on the close of that day's business. About eight or nine o'clock that evening (Friday), the plaintiffs executed to Terrell & Vincent their three promissory notes, aggregating the sum, and on the terms agreed on, when Vincent, acting for his firm, told one of the plaintiffs, "now the goods are yours," and the keys of the store in which the goods were kept were then delivered to a brother of

[Shealy & Finn v. Edwards.]

one of the plaintiffs, as their agent, who was then left in charge of the store and goods as plaintiffs' agent, with instructions to continue the business for them. On the following day (Saturday) the store was opened, and plaintiffs' agent, during the entire day, sold goods for them out of said stock. About half past twelve or one o'clock on the following Monday morning the defendant Edwards levied the attachment referred to in his special plea on the goods as the property of Terrell & Vincent, and kept possession of them, and sold them under said attachment. The bill of exceptions also recites that "the evidence for defendants further tended to show that said sale was made to hinder, delay and defraud creditors; and the evidence on the part of the plaintiffs tended to show that said sale was made in good faith, and for an adequate consideration."

In its general charge, the circuit court instructed the jury, *inter alia,* that "if they found from the evidence that any thing remained to be done by either party to the sale of the goods to complete the sale, such as to fix the price of any portion of them, or to weigh or measure any part of them, then the title to the goods in question did [not] pass to plaintiffs, and they can not recover in this action." The court, at the written request of the defendants, also gave the following charges: 1. "If the jury find from the evidence that a proposition was made by Terrell & Vincent to sell the goods in controversy to Shealy & Finn, and Shealy & Finn agreed to accept the proposition, but if any thing remained to be done before the completion of the trade, and that the contract never was completed, then the property in the goods never passed to Shealy & Finn, and they can not recover in this action." 2. "If you believe from the evidence that the goods were sold in bulk, and the price was not agreed on at the time of the sale, but was afterwards to be settled by agreement of the parties, and that the price was not settled before the levy of the attachment, then the title to the goods did not vest in Shealy & Finn, and you must so find." 3. "In the sale of personal property, when any thing remains to be done before the sale can be considered as complete, whether to be done by the vendee or vendor, as between the parties themselves, the right of property does not pass, although the property be placed in the possession of the vendee; and if the jury believe that, in the contract between Terrell & Vincent and Shealy & Finn, any thing was left to be done in the future, as, for instance, to agree as to the price of a part of the goods, or to ascertain the quantity of the goods, then the title to the goods did not pass to Shealy & Finn, and they can not recover."

To the charge given *ex mero motu,* and to the charges given at

the defendants' request the plaintiffs duly excepted; and the rulings thereon are here assigned as error.

HEFLIN, BOWDEN & KNOX and PARSONS & PARSONS, for appellants, cited *Macomber v. Parker*, 13 Pick. 175; *Riddle v. Varnum*, 20 Pick. 280; Parson on Mer. Law, p. 48; *Allen, Bethune & Co. v. Maury*, 66 Ala. 10; *Magee v. Billingsley*, 3 Ala. 679; *Tarling v. Baxter*, 6 Barn. & Cress. 360; *Valpy v. Gibson*, 4 C. B. 837.

BRADFORD & BISHOP, *contra*. (No brief came to the hands of the reporter.)

SOMERVILLE, J.—The sole question presented is, whether the alleged sale made by Terrell & Vincent of their stock of merchandise to the appellants, Shealy & Finn, was complete at the time the defendant Edwards, as sheriff of Talladega county, levied the attachment in favor of Hardie, which occurred on December 12th, 1881. If so, the property in the goods had at this time passed to the vendees, and they were no longer liable to be attached under legal process against the vendors.

The principle is often stated to be, that " if any thing remains to be done by either party to the transaction, *before delivery*—as for example to determine the price, quantity or identity of the thing sold—the title does not vest in the purchaser, but the contract is merely *executory*."—*Allen, Bethune & Co. v. Maury & Co.*, 66 Ala. 10; Chitty on Contr. 299.

There seems to be no objection to this as a *general* proposition, but it must be limited to those cases where the evidence does not show *an intention to make the sale absolute and complete, without any regard to the performance of these usual prerequisites*, at least as to *price* and *measurement*. This rule, as suggested by Shaw, C. J., in *Sumner v. Hamlet*, 12 Pick. 76, 82, applies only to " cases of *constructive delivery and constructive possession;* and the rule is resorted to for the purpose of determining when the contract of sale is so far complete as to pass the property, according *to the intent of the parties in the contract.*" We take the true rule to be, as now established, that, if the goods are sufficiently identified, a complete sale of them may be made without fixing an absolute price, if such be the clear intention of the parties, as legally evinced by the circumstances attending the sale.

This would seem a reasonable rule according to the principles of analogy adopted in all other cases. In the construction of contracts generally, it is a first and pervading principle, that the intention of the parties must govern, unless that intention

contravenes some established principle of law. The same rule is equally dominant in construing wills. The primary purpose is to ascertain the intention of the testator. We deem it of paramount importance in construing contracts of sale—a subject which is still involved in much confusion, notwithstanding the vast resources of learning expended upon it by the jurists and law-writers of the past century. This confusion is manifest in the two converse propositions, stated by Mr. Parsons, each of which is obviously true: "If the property passes, then it is a completed sale, and if a completed sale, then the property passes."—1 Parson's Contr. 440. Hence, we sometimes have the unsatisfactory test applied, as to whether or not the goods, in case of loss by *fire*, would be at the risk of the seller or buyer, thus presenting, as suggested by Mr. Hilliard in his work on Sales, a clear instance of the logical fallacy of a mere *petitio principii*, or begging of the question.—Hilliard on Sales, p. 55, § 2.

The same writer, in discussing the particular subject under consideration,—that of *intention and delivery*, in the sale of personal property—states the general doctrine to be, that, "where any thing remains to be done by the seller of goods, as between him and the purchaser, *before delivery*, the latter acquires no complete, present right of property ; *at least without affirmative proof of an intent that he shall acquire such property*." "The rule," he concludes, "is held to apply where either the property or *price is unsettled*."—Hilliard on Sales, p. 190, chap. 9, § 1.

Mr. Addison, in his work on Contracts, holds the same doctrine. After stating the general rule, as to the necessity of fixing the price, and other prerequisites in executory sales, he observes: "Moreover, if it appears by the terms of the contract that it was *the intention of the parties* that the *property should pass to the buyer, it will pass,* although the goods have still to be weighed, measured, or tested, provided the subject-matter of the sale is ascertained and identified ; and there may be a complete contract so as to pass the property in the goods, although *the price has not been definitely agreed on,* or although the goods are still unfinished, or unweighed." He cites numerous cases in support of these several propositions.

Mr. Benjamin asserts it to be an unquestionable rule of law, that, even in *executory* contracts of sale, where no *price* is fixed for the goods sold, the vendor is entitled to recover against the buyer for not accepting the goods.—Benj. on Sales, § 85 ; *Hoadly v. McLaine*, 10 Bing. 482. So he says that if the price is to be fixed by agreement of appraisers, or of the parties, and the contract is *in other respects executory*, there is no sale without such agreement. "But if the contract *has been executed by*

*the delivery of the goods*, the vendor would be entitled to recover *the value estimated by the jury*, if the purchaser should do any act to obstruct or render impossible the valuation." Benj. on Sales, § 87; *Clarke v. Westrope*, 18 C. B. 765; *Wittskowsky v. Wasson*, 71 N. C. 456.

In *Boswell v. Green*,, 1 Dutcher (N. J.) 390, the same question arose and was decided in accordance with these views. It was there held that the property to the goods could pass although they had not been measured, or the aggregate price ascertained. "Where it is clear, by the terms of the contract," it was said by the court, "that the parties *intended that the sale should be complete*, before the article sold is weighed or measured, the property will pass before this is done."

The case of *Macomber v. Parker*, 13 Pick. 175, cited by appellant's counsel, was a case not unlike the present in some of its most important features. After laying down the general principle, as stated in *Allen v Maury*, 66 Ala. 10, the court say: "But where the goods or commodities are *actually delivered*, that shows *the intention of the parties* to complete the sale by delivery, and the weighing, or measuring, or counting afterwards would not be considered as any part of the contract, but would be taken to refer to the adjustment of the final settlement as to the price. The sale would be as complete as a sale upon credit before the actual payment of the price."

The *actual delivery* of the goods is of the greatest importance as evincing an intention to pass the property, so as to complete the sale. It was held by this court in *Morgan v. Smith*, 29 Ala. 283, that the delivery of a bill of sale of personal property *per se* transferred the property, in the absence of countervailing circumstances, and such is the settled doctrine. Delivery is often said to be the primary and immediate duty of a vendor after the contract of sale is completed. The chief purpose is generally to effect a transmutation of property, and, if unaccompanied by explanation, the purchaser generally has a right to regard it as absolute.—Benj. on Sales, § 674; *Upton v. Sturbridge Mills*, 111 Mass. 453.. If there be accompanying declarations, showing an intention to pass the property to the vendee, as in this case, immediately and not at some future time, the fact of delivery, as evidence of intention, becomes manifestly the most cogent of all legal proofs, where the good faith of the transaction is not impugned for fraud.

The rule as to *price*, in *executory* contracts of sale, is generally said to be, that it must be certain, or capable of being made certain. Such is undoubtedly the settled doctrine, and although, *in such case*, if the agreement be that it is to be fixed by arbitration, the sale must be considered void if the arbitrators fail to agree, a different principle prevails *where the contract*

*of sale is complete and executed.* In the latter class of contracts, where the seller, whether by actual delivery or other like unequivocal act, *intentionally passes the property* in specific goods to the purchaser, without fixing the *price*, the law leaves the price to be adjusted by the agreement of the parties, or, if they fail to agree, by *the verdict of a jury.* If such price is left open for future adjustment by consent, the property being delivered with the expressed intention to complete the sale, the price to be agreed on is implied to be one that is fair and reasonable, and this is always the rule of recovery on a *quantum meruit*, or *quantum valebat.* If there should or can be no mutual consent, the implication follows, as part of the original contract of sale, that a jury will adjust it, just as manifestly as in every day sales and delivery of goods by merchants on *open account*, where the price is very often not adjusted for months afterwards.—Benj. on Sales, § 87; *Valpy v. Gibson*, 4 C. B. 837; *Macomber v. Parker*, 13 Pick. 175.

The present case is a stronger one than the above rules would seem to require, in order to constitute an absolute and complete sale. The goods were *actually delivered* by the sellers to the purchasers. The delivery was accompanied by a declaration of the sellers—showing *an intention to pass the property* to the purchasers—" *Now the goods are yours.*" The purchasers took possession and exercised dominion over the property as their own, continuing the sale of the goods on their own account during an entire day before the levy of the writ of attachment. The notes of the purchasers were given for the *estimated price* of the goods, which aggregated a fixed sum, $2750.00. It is true, that it was agreed that this price should be changed, being more or less, according as the actual valuation of the goods might be fixed by the contracting parties on the Monday following the transaction, and it never was fixed because of the interruption occasioned by the levy of the attachment. We are clear in the view that these facts, without any rebutting circumstances, would constitute an *executed contract of sale.*

There is evidence in the record which tends to impugn the good faith of the transaction, but the question of fraud is not raised by any ruling of the court, or assignment of error.

The rulings of the court excepted to were not in accordance with the views expressed in this opinion, and the judgment must, therefore, be reversed and the cause remanded.