# Nashville, Chattanooga & St. Louis Ry. *v.* Wood.

## *Assumpsit.*

### (Decided Feb. 9, 1911.   54 South. 753.)

1. *Evidence; Value; Contract Price.*—Where the plaintiff claimed damages on account of the refusal of the defendant to accept certain cross ties, alleging that the defendant had agreed to pay 38 cents for first class, and 19 cents for second class, ties, it was competent to establish such a price, either by express or implied agreement; but plaintiff could not prove a quantum valebant in order to fix the price.

2. *Sales; Implied Agreement.*—If a sale is made without a specification as to the price or any method by which it is to be determined, the law implies a reasonable price, and this principle applies to executory as well as executed sales; in such a case, on the vendee's refusal to accept the goods, the vendor may sue for damages, but without proof of special damages the recovery is limited to nominal damages.

3. *Same; Agreement to Pay; Evidence.*—In an action for damages for defendant's refusal to accept a lot of cross ties, the evidence is examined and held insufficient to show either an expressed or implied agreement as to the price.

[Nashville, Chattanooga & St. Louis Ry. v. Wood.]

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by John H. Wood against the Nashville, Chattanooga & St. Louis Railway. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The following is the correspondence between plaintiff and G. D. Hicks, called for in the opinion:

Letter from Hicks to Wood:

"Jan. 25, 1906. Replying to your favor of the 20th, Mr. Wall's contract at 40 cents was on a guaranty that he would deliver a specified number, we retaining 5% until the full number is delivered, which would make it 38 cents, the balance to be paid on completion of his contract. If not filled then, he only gets 38 cents. It is too late in the season now to issue further contracts, but would be glad to correspond with you about the 1st of August next, with a view of giving individual contracts."

Letter from Wood to Hicks:

"Feb. 4, 1906. Do you want my ties that I will have ready in the next thirty days at 40c? Will correspond with you later for summer and fall. Please answer by wire, via way of Guntersville."

Telegram from Hicks to Wood:

"Will take ties thirty-eight and nineteen."

Telegram to Hicks from Wood:

"Have seven thousand ready for shipment. Bought Houser's ties."

Letter from Hicks to Wood:

"Feb. 26, 1906. Referring to your wire of the 24th. On Oct. 2 I forwarded you contract for cross-ties, but same has never been signed and returned by you as requested. Would be glad to have this at your earliest opportunity. Will have Mr. Lane see about taking up your ties."

Letter from Hicks to Lane:

"Referring to your letter of Feb. 26, in regard to ties belonging to Mr. Wood at Caperton Ferry, if Mr. Wood. will kindly refer to my letter of Oct. 3, 1905, enclosing him contract, he will note that same was to apply between Buck Island and Incline; it being understood that we could not go far above Guntersville for ties. We will, therefore, not take ties above Columbus City. Mr. Houser also tried to sell me his ties, but I declined to buy them on account of the distance. Furthermore, Mr. Wood's letter of the 4th inst. states that he would have from four to eight hundred ties. It is these I agreed to pay 38 and 19 cts. for. We can take his ties at Columbus City, but no other."

Letter from Hicks to Wood:

"I have written to Mr. Lane, and stated to him that if he instructed you to buy these ties so far up the river he would arrange to get them, but in the future we would not take any ties higher up the river than Columbus City, as when barge was asked to go after them it was stated that it was to be loaded at Columbus City."

Letter from Hicks to Wood:

"March 17, 1906. Referring to your favor of recent date in regard to ties at Caperton's Ferry, which you claim Mr. Lane told you to buy and that we would go after them. Mr. Lane positively denies telling you anything of the sort, and my instructions all along have been not to take any ties above Columbus City. I find that we have taken some a few miles above that point, however. Under the circumstances, we cannot get to Caperton's Ferry for the ties which you have bought from Mr. Houser, and will confine ourselves to Columbus City and vicinity for up-river ties."

Letter from Wood to Hicks:

"April 6, 1906.  Your letter to Mr. Lane in regard to up-river ties received, and I was very much surprised at the contents, as I will explain later on.  Now, as to your letter of October 3, 1905, will say that I have never varied from it until instructed to do so, notwithstanding you were receiving ties several miles above Columbus City all the while from Mr. Wall.  I have never delivered a tie above Columbus City, and never bought one until Feb. 23, and I was then instructed to do so.  On Feb. 13 Mr. Lane came up and was taking up ties, and told me that there were some ties up the river for sale, and for me to go up there and buy them, and we would go and get them, but I did not go, so on the 21st he came after ties again, and he told me that you had conferred with him and Mr. Lane about their going after said ties, and that he had written you the day before, which would have been the 20th, and that Mr. Rains had wrote you that morning, the 21st stating that they would go after the ties, and told me to go and buy them, that you wanted the ties, and that he would go and get them right away; and being well acquainted with Mr. Lane, and knowing him to be an official of the road, I thought the instructions were all right, and am satisfied Mr. Lane thought so, or he would not have advised me.  Mr. Lane told me to buy the ties and wire you from Scottsboro, so I left home the 22d in the rain and drove four days in securing said ties, and drove several miles by way of Scottsboro out of my way to wire you according to Mr. Lane's instructions.  So you will see I have never bought a tie above Columbus City, until I had instructions to do so.  I was talking to Mr. Rains yesterday about the matter, and he said he would confer with you, and he thought you could arrange to go and get them, and stated that it would be an easy matter to get them a little

later, and that if you would inspect them and settle for same that the boat could go after them when they had leisure days and would not miss the time. Mr. Hicks, I hope you can arrange to take those ties. They are a fine lot of ties and convenient to load. I paid some on them, and made written contract to receive them in thirty days; bal. to be paid when statement was sent in to general office. I was acting in good faith and thinking I was complying with your wishes. Hoping you will consider this matter favorably, and let me hear from you at the earliest possible date."

Letter from Houser to Col. Lane:

"Nov. 12, 1906. Some days since Mr. J. H. Wood contracted with me for some 6,000 ties now on the river from Caperton's Ferry to Columbus City, with a limit of thirty days to move said ties, assuring me you people had agreed to come for the ties; also agreed to come to section on March 1, but no boat came. I sincerely ask you to inform me whether or not your boats are to come for the ties or not, as I am obliged to do something ere long with the ties."

WALKER & SPRAGINS, for appellant. On a former appeal it was decided plaintiff was not entitled to recover because of a variance between the pleading and proof.— *N. C. & St. L. v. Wood,* 46 South. 561. Where the sale is executory and no price is fixed for the goods the vendor has an action against the buyer for failure to accept the goods, and the measure of damages is the difference in the contract price and the market price, and if the implied contract price is the market price, evidently there can be no damage.—24 A. & E. Enc. of Law, 1036; *Trankey v. Hedstiom,* 131 Ill. 208. Consequently, the court erred in refusing charges 11 and 13. There is no contract where the price is not determined.—*Butler v. Ken-*

*nemar*, 67 Atl. 332; *Bigbee v. Risher*, 63 Pa. St. 152. If the parties agree upon the sale at a price to be fixed afterwards,, and they fail to agree as to the price, there is no sale.—*Shealley v. Edwards*, 73 Ala. 181; *Whitthoncky v. Wasson*, 71 N. C. 451. The reasonable price would be the market price at the time and place of delivery.—24 A. & S. Enc. of Law, 1037.

JOHN A. LUSK, for appellee. There was sufficient evidence to bind the defendant by ratification if the jury found that a contract was made.—2 Page on Contr. 1520. The dealings of the parties as to other ties was admissible for the purpose of enabling the jury to find the facts as to what the parties agreed on as to price.—1 Elliott on A. & E. Enc. of Law, 1037.

SOMERVILLE, J.—Both counts of the amended complaint claim damages for the refusal of the defendant to accept a lot of cross-ties, for which, as alleged, defendant had agreed to pay plaintiff 38 cents for the first-class and 19 cents for second-class ties.. Under this averment as to the agreed price, it was permissible for plaintiff to establish such price by either express or implied agreement; but he could not prove a quantum valebant, in order to fix the price of the ties. It is conceded that there was no express agreement by which the purchase price of the ties was fixed, and the material question presented by the assignments of error, especially those predicated upon the refusal by the trial court to give the general affirmative charge in favor of the defendant, is whether there was any evidence before the court tending to show by implication that the minds of plaintiff and defendant met and agreed upon the price averred in the complaint , viz., 38 cents for first-class and 19 cents for second-class ties. If there is no such evidence, it is ob-

vious that the trial court erred in refusing to give the affirmative charge for defendant.

The testimony for plaintiff tends to show that one John Lane, an agent of defendant, but without authority to purchase ties, requested him to buy a lot of ties from one Houser, and to inform one G. D. Hicks, defendant's tie-purchasing agent, who lived at Tullahoma, Tenn., promising that he (Lane) would then take up the ties; that plaintiff did purchase 7,000 ties from Houser, and wired Hicks of the purchase; that a correspondence ensued between them relative to the Houser ties, resulting finally in the announcement by Hicks that he could not take the ties, as he could not get to Caperton's Ferry (this correspondence will be set out in full by the reporter); that defendant's agents took up 253 of the Houser ties at Cooley's Landing and Cycamore Landing, for which plaintiff received pay at 38 cents for first-class and 19 cents for second-class ties; that several months previously said Hicks had sent to him a contract for his signature and return, providing for the purchase from him by defendant of ties not higher up in the river than Buck Island at 35 cents for first-class and 17 cents for second-class; that he did not sign that contract, because he would not undertake to deliver 5,000 ties within the river limits specified; that he thereafter furnished ties to defendant at 35 cents and 17 cents, but not under that contract; that he asked Hicks for a contract for ties above Buck Island, which was refused; that before the conversation with John Lane he had sold, and was then selling ties to defendant at 38 cents and 19 cents, but never any above Columbus City; and that defendant "was paying 38 cents and 19 cents for ties." The evidence shows without conflict that Columbus City is about 10 miles above Guntersville, Buck Island "a few miles above Guntersville" and below Columbus City, Cycamore

[Nashville, Chattanooga & St. Louis Ry. v. Wood.]

Landing and Cooley's Landing several miles above Columbus City and Caperton's Ferry 40 or 50 miles above Columbus City. It further shows that to take a boat to Caperton's Ferry, or "much above Columbus City," would require two days for the trip, while to go to Columbus City would require only one day, and that the Houser ties were at various points on the river between Columbus City and Caperton's Ferry. The 253 Houser ties taken and paid for by defendant were taken on or before February 28, 1906, and the ratification of Lane's purchase by Hicks was on March 8, 1906, by the letter replying to plaintiff's letter to Hicks, dated March 3, 1906. The Houser lot of ties had, before plaintiff bought them, been offered by Houser to defendant at 35 and 17 cents, and the offer declined by defendant, "because the ties were too far up the river."

Do the foregoing facts either show, or permit any rational inference, that defendant agreed to pay for the Houser ties, all of which were located above Columbus City at distances ranging from a few miles to 40 or 50 miles, the price of 38 cents for ties of the first class and 19 cents for ties of the second class, as alleged in the complaint? If a sale be made without a specification of the price, or of any method by which it is to be subsequently determined, the law will imply a reasonable price; and this principle applies, it seems, to executory as well as executed sales.—*Shealy v. Edwards*, 73 Ala. 175, 49 Am. Rep. 43; 24 Am. & Eng. Ency. of Law, 1036. In such a case, for the vendee's refusal to accept the goods the vendor would have his action for damages; but, in the absence of proof that the seller has suffered some special damage, the recovery would be only for nominal damages. —24 Am. & Eng. Ency. Law, pp. 1115-1117, and cases cited. But, as we have seen, such is not the nature of the present case, and under the averments

of this complaint the plaintiff cannot recover at all, unless he shows an agreement by the defendant to pay the specified price: If any agreement has been shown, it is quite certain, not only that it did not fix any price, nor supply any means for fixing it, but that there was no course of dealing, nor any previous dealings, between the parties from which it could be inferred that they understood and agreed that 38 cents and 19 cents, for first and second class ties, respectively, was to be paid for any ties above Columbus City. The distance of the ties up the river was an important factor in the value of the ties to the defendant, and determined the price it was willing to pay for them. It had already previously declined to buy these same ties from Houser at a price lower than now claimed by plaintiff, on the ground that they were too far up the river; and plaintiff himself testified that he had never before sold defendant any ties above Columbus City. Moreover, there was then pending between plaintiff and defendant a proposition on the part of defendant to buy ties below Columbus City at 35 cents and 17 cents; and, in relation to taking up these Houser ties, defendant's agent, Hicks, was referring to this proposition, and requesting that it be signed and returned to him by plaintiff. It is clear, therefore, that the evidence has no tendency whatever to show any agreement as to price, as alleged in the complaint; and it results that the trial court should have given the general affirmative charge for the defendant as requested.

In this view of the case, it is not necessary to consider other assignments of error. For the error above pointed out, the judgment of the trial court must be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.