# CASES

# SUPREME COURT OF ALABAMA,

## DECEMBER TERM, 1881.

## Ellerson *v.* The State.

*Indictment for Selling or Removing Personal Property covered by Lien or Claim.*

1. *Indictment; when form prescribed by Code sufficient.*—An indictment for selling or removing personal property covered by lien or claim (Code of 1876, § 4353), which follows the form prescribed by the Code, is sufficient.

2. *Subscribing witness; when proof of execution of instrument must be made by.*—On the trial of a defendant indicted for a violation of section 43.3 of the Code of 1876, it is error to allow the State to prove by the prosecutor, against the defendant's objection, the execution of a contract between him and the defendant, under which the lien or claim is asserted, and which is attested by a subscribing witness, without having first accounted for the absence of such witness.

3. *Ingredients of the offense denounced by § 4353 of the Code of 1876.*—To constitute the offense of selling or removing personal property covered by a lien or claim, it is necessary to prove, (1) that the prosecutor had a claim to the property under a written instrument, or a lien thereon created by law for rent or advances, or some other lawful or valid claim, verbal or written; (2) that the accused having knowledge of the existence of such claim or lien, removed or sold the property; and (3) that he removed or sold it for the purpose of hindering, delaying or defrauding the prosecutor; and it is error for the court to refuse a charge asserting that these facts must be established by the evidence beyond all reasonable doubt, before they can convict, and that a reasonable doubt of the existence of either of these facts, growing out of the evidence, entitled the defendant to an acquittal.

4. *Section 4353 of the Code construed.*—The words "lien" and "claim" are used in Section 4353 of the Code of 1876, prohibiting the sale or removal of personal property covered by a lien or claim, in a kindred sense, embracing mere charges or incumbrances upon the general ownership, and not the general ownership itself.

5. *Same ; when contract not protected thereby.*—The prosecutor and the defendant entered into a contract, which recites that the former had employed the latter and others to labor on a designated tract or parcel of land for the year, 1880, and in which the prosecutor stipulated to furnish the land, team and feed for the team, and tools to work the land, and seed to plant it, and the defendant stipulated to furnish the labor and feed it, to be responsible for all tools, implements and gear used by him, to treat the stock well and to do good work. It was further provided, that the prosecutor was to have one half of the crop made, and the defendant was to have the other half, from which he was to pay all advances made to him, and for any labor to help him, if it was necessary to hire help. *Held*, that the relation between the prosecutor and the defendant under the contract, was either that of master and servant, or that of tenants in common; and that in either relation the prosecutor had a general ownership in the crops raised under the contract, and not a lien or claim within the meaning of section 4353 of the Code of 1876; and that, therefore, the defendant could not be convicted, under that section, for selling or removing a part of such crops.

APPEAL from Clay Circuit Court.

Tried before Hon. LEROY F. BOX.

At the Spring Term, 1881, of said court, Philip Ellerson, the defendant, was indicted, tried and convicted, under section 4353 of the Code of 1876, for selling or removing personal property, on which one Ulysses Lewis is alleged to have had a lien or claim, the indictment following the form prescribed by the Code, and alleging the value of the property to be twenty dollars. The defendant demurred to the indictment, and his demurrer having been overruled by the court, he pleaded not guilty, and upon this plea the cause was tried. On the trial the State, against the defendant's objection, was allowed to prove by Lewis the execution of a written contract between him and the defendant and three others, to which there was a subscribing witness, without having first accounted for the absence of such subscribing witness, and the defendant excepted. The contract, the substance of which is stated in the opinion, was then read to the jury. The evidence showed, that the defendant and the other laborers who signed the contract with him, raised a crop of corn and cotton under the contract; that in November, 1880, the corn so raised by them, having been gathered, was hauled up and put in a pile, and was then divided between Lewis, and the defendant and his co-laborers, the former getting one half, and the latter the other half thereof; and that then the defendant and the other laborers divided their half between themselves, and each one put his portion in his own crib; that Lewis advanced supplies to the defendant under said contract to enable him to make a crop, for which the defendant owed him a balance; that at the time the corn was divided, Lewis told the defendant not to remove the corn until a settlement could be had between them. Evidence was also introduced tending to show that the defendant, in January,

[Ellerson v. The State.]

1881, removed from the place, taking with him several bushels of the corn which had been allotted to him on the division, in a large sack. This being the substance of the evidence introduced on behalf of the State, the defendant asked in writing the following charges, among others:

1. "If you believe all the evidence in this case, you can not find the defendant guilty under this indictment." 4. "The elements of the offense charged in this indictment, are (1) that in Clay county and within twelve months before the finding of this indictment, the defendant sold or removed the corn for which the State has elected to proceed; (2) that he removed or sold it with the purpose or intent to hinder, delay or defraud Mr. Lewis; (3) that at the time he removed it, he was indebted to Lewis, and that Lewis had a lien on, or lawful claim to it; and (4) that the defendant had, at the time he removed or sold it, knowledge of the existence of such lien or claim—all four of these constituents must be established by the evidence beyond all reasonable doubt, or you must acquit. A reasonable doubt in your minds, growing out of the evidence, of the existence of either one of the four elements, entitles the defendant to an acquittal at your hands." The court refused to give these charges, and the defendant separately excepted.

The rulings of the Circuit Court above noted are among the assignments of error made in this court.

PARSONS & PEARCE, for appellant.

H. C. TOMPKINS, Attorney-General, for the State.

BRICKELL, C. J.—The indictment follows the form prescibed by the Code, and must be deemed sufficient.—Code of 1876, Form 57, p. 997.

2. Where the execution of a private writing having the attestation of a subscribing witness, is drawn in question directly, not incidentally, the evidence of the subscribing witness is the best and only admissible evidence, unless the impracticability of producing it can be satisfactorily shown, or unless the witness has become legally incompetent from some cause not chargeable as a fault against the party on whom the making of the proof devolves.—1 Greenl. Ev. § 569. *Bennett v. Robinson*, 3 Stew. & Port. 227. The rule may have been originally framed in reference to deeds, or other solemn instruments usually attested by witnesses, but it is now extended to every private writing which the parties may have chosen to cause to be attested. The witness is considered as the person selected and referred to for the purpose of proving the fact of execution, and the facts and circumstances attending it.—1 Green. Ev. § 569.

The absence of the subscribing witness to the contract in writing between the accused and the prosecutor, from which the lien or claim to the corn the accused is charged with having removed or sold, is derived, was not accounted for, nor any reason given for not producing his evidence. The Circuit Court erred in permitting the prosecutor to prove the execution of the contract.

3. To constitute the offense charged in the indictment, three facts must have been proved by the prosecution : 1. That the prosecutor had a claim to the corn under a written instrument; or that he had a lien thereon created by law for rent or advances, or some lawful or valid claim, verbal or written. 2. That the accused having knowledge of the existence of such claim or lien, removed or sold the corn. 3. That he removed or sold it for the purpose of hindering, delaying or defrauding the prosecutor.—Code of 1876, § 4353. These facts, and each of them, the State was bound to prove fully. It is not sufficient that the weight of evidence may point to their existence, or to the existence of one or more of them. In criminal cases the State must prove beyond all reasonable doubt every fact which is a material constituent of the offense, and if they are not shown by evidence clear and satisfactory, leaving their existence free from reasonable doubt, whatever may be the preponderance of evidence, the jury should be instructed to acquit. This is the proposition asserted in the fourth charge requested by the appellant, embodying also, very properly, the affirmation that the State was bound to prove the venue, and that the offense had been committed within the period prescribed as a bar by the statute of limitations. The charge asserting a correct legal proposition applicable to the evidence, it was the duty of the Circuit Court to give it in the terms requested.

4. The contract between Lewis, the prosecutor, and the accused recites, that Lewis had employed the accused and others to labor on a tract or parcel of land known as the " Gordon place," for the year 1880. Lewis stipulated to furnish the land, team and feed for the team, and tools to work the land, and seed to plant it. The accused stipulated to furnish the labor and feed it, to be responsible for all tools, implements and gear used by them, to treat the stock well, and do good work. Lewis was to have one half the crop made, and the laborers the other half, from which they were to pay all advances made to them, and for any labor employed to help them, if it was necessary to hire help. There are questions of much practical importance to the proprietors and cultivators of lands in pursuance of contracts of this species, the case suggests, upon which it is not now necessary to express an opinion. Unless the right or title of Lewis to the crops grown is that of a mere lien, or

[Ellerson v. The State.]

a claim in the nature of a lien, the removal or selling of the crop by the accused, without the consent of Lewis, may have been wrongful, and even criminal, but would not fall within the interdiction of the statute upon which the indictment is founded. If the relation between Lewis and the accused is merely that of master and servant, the accused to be compensated for his services with one half of the crops, the ownership of the crops would reside exclusively in Lewis. Under the statute, Code of 1876, § 3475, the accused would have a lien on the crops for the portion of the crop, or value thereof, which he was entitled to receive by the terms of the contract. If the contract is not of hire, in which the laborer is to receive a portion of the crop as compensation for his services; if it is a contract by which the accused was let into the occupancy, and had the right to occupy the premises for the year, and was ·bound to the cultivation of the crops, the product to be equally divided with Lewis, the landowner, then, as between them, the relation of tenants in common of the crops would exist.— *Thompson v. Mawhinney*, 17 Ala. 362; *Strother v. Butler*, Ib. 733; *Smyth v. Tankersley*, 20 Ala. 212; *Williams v. Nolen*, 34 Ala. 167. In neither relation—that of master and servant, or tenants in common—would Lewis have a lien on the crops, or a claim in or to them, in the sense of the word, claim, as it is used in the statute. If the contract is of hire, the ownership of the crops would reside exclusively in Lewis. For any and all injuries to them he alone would be entitled to sue. Upon them the laborer would have a lien or claim by virtue of the statute, and a sale or removal of them, for the purpose of hindering, delaying or defrauding the laborer in the assertion and enforcement of the lien, would fall within the statute. If they were taken and carried away by the laborer fraudulently or feloniously, he might be guilty of larceny under certain circumstances, but not of selling or removing property on which the employer had only a lien or claim. In the other view of the contract,—if the relation of tenants in common exists, and one of the co-tenants, for the purpose of defrauding the other, sold, converted, or concealed the crops, the offense denounced by § 4355 of the Code would be committed, but not the offense of selling or removing property, on which another had a lien or claim. The statute is not intended for the protection of tenants in common against the fraudulent acts of their co-tenants. Nor is it intended for the protection of the master against the fraudulent acts of his servants; nor yet to protect the general ownership of personal property. Liens have been multiplied by statutes, and to particular contracts liens on particular property are attached. For specific liens parties may contract, and legal remedies for the enforcement of such liens are au-

[Green v. The State.]

thorized. The protection of these liens from delay, hindrance or disappointment by the act of the general owner, or other person having knowledge of the lien, the statute is intended to afford. True, the statute employs the word *claim*, as well as the word *lien*, and the former is generally of larger meaning than the latter, and may embrace the general ownership, while the latter usually embraces simply a right to charge property. But it is evident the words are used in a kindred sense, embracing mere charges or encumbrances upon the general ownership, and not the general ownership itself. In no aspect of the case, as presented to the Circuit Court, had the prosecutor a lien, or a claim in the nature of a lien, or encumbrance upon the corn, charged to have been sold and removed by the accused. He was the owner of it solely and exclusively, or as a tenant in common with the accused. Whether the one or the other is the true relation arising out of the contract, it is not necessary to determine; for in neither relation could the accused be guilty of the offense with which he is charged.

The judgment of the Circuit Court must be reversed, and a judgment here rendered discharging the appellant from further prosecution.