# Wilkinson *v.* Williamson.

*Action on Common Counts, for Price of Timber sold.*

1. *Evidence of custom, or usage ; when admissible.*—Under an express contract for the sale of timber, all the terms being agreed on at the time, and a controversy afterwards arising as to the price agreed on, evidence of custom or usage can not be received to determine it.

2. *Contract of sale ; agreement as to price.*—On a sale of personal property, the contract may be complete, without specifying the price to be paid ; as where it is not stated, or is left open for future adjustment by consent, the property being delivered with the intention to complete the sale. But, where the price is not left open by consent, and is not fixed by the concurring assent of the parties—the vendor intending to

sell at one price, and the purchaser intending to buy at a different price—though the property is delivered, there is no complete contract; and either party may rescind, on discovering the mutual mistake, by offering to return the money, or the property, as the case may be.

3. *Same; liability of purchaser, on loss or destruction of property.* If the property is delivered to the purchaser under such incomplete contract, and is afterwards lost, consumed, or otherwise placed beyond his control, by his own fault, so that, on a rescission of the contract, the parties could not be placed *in statu quo,* the purchaser would, *it seems,* be liable for a reasonable price, as upon a *quantum valebat.*

4. *Credibility of witness, as affected by illiteracy or learning.*—The illiteracy of one witness, or the learning of another, does not affect the credibility of either, " at least where the facts testified to are equally within the comprehension of the two classes of persons."

5. *Retention of money by vendor.*—Under such incomplete contract, the seller's retention of money paid by the purchaser, being equally consistent with each version of the contract, can not be considered a ratification of the contract at the price insisted on by the purchaser.

APPEAL from the Circuit Court of Butler.

Tried before the Hon. JNO. P. HUBBARD.

This action was brought by James Williamson, against W. W. Wilkinson, to recover the sum of $141.32, which the plaintiff claimed as the balance due him for the price of timber sold and delivered by him to the defendant, on or about February 15th, 1882. The complaint contained only the common counts; the defendant pleaded, " in short by consent, the general issue and payment ;" and the cause was tried on issue joined on these pleas. On the trial, as the bill of exceptions shows, the plaintiff testified in his own behalf, " that he made a contract with defendant to get out timber for him, of certain class and average, at the price of eight cents per cubic foot, upon a basis of 100 feet average ;" that he got out eighty pieces of timber under this contract, but allowed it to remain " in the woods and water" until it was damaged; that he had it carried down to Pensacola, where it was to be delivered, and where, after inspection by the proper officer, he offered it to defendant's agents; that they declined to receive it under the contract, being classed by the inspector as " sap-damaged," but offered him six cents per foot for it; that he accepted this price, after trying the market, and said agents then made out " a specification of the timber and a calculation, for him to come to Greenville and get the money." The material question in the case was as to the agreed price to be paid for the timber; the plaintiff insisting that it " was six cents per foot, and not on a basis of six cents per foot ;" while the defendant insisted, and said agents testified as witnesses for him, " that the agreed price was on a basis of six cents per foot." The bill of exceptions states, that it was shown by the testimony of men engaged in the timber business, " that, according to the rules and customs of the men engaged in the business, when a

contract was made for the sale of such timber at so much 'per foot on a basis,' the term meant 'on a basis of one hundred feet average,' while so much 'per foot' meant without an average; so that 'six cents per foot on a basis' meant 'on a basis of one hundred feet average,' and 'six cents per foot' meant 'without reference to any average;' and the difference between the two prices, as thus expressed and calculated, was the sum in controversy."

A witness for the plaintiff, who had been engaged in the timber business at Pensacola for ten or fifteen years, and who saw the plaintiff's said timber, testified, "that it was the custom to sell sap-damaged timber, of the character of the timber involved in this suit, at so much per cubic foot, without reference to a basis;" and to the admission of this evidence the defendant objected and excepted. The plaintiff was an illiterate man, and could neither read nor write; and he testified that, on that account, "he trusted defendant's said agents to make the calculation, and accepted payment according to that calculation, under the belief that it was at six cents per foot." A witness for the plaintiff, who was present at the interview between him and the defendant's agents, but who could neither read nor write, testified to the plaintiff's version of the contract; while the defendant's agents, by whom the contract and the calculation were made, testified that the price offered and accepted was "six cents a foot on a basis, or average of one hundred feet;" and the defendant's agent in Greenville, by whom the money was paid on settlement of the account, testified that, when plaintiff insisted that he had not been paid the full amount due him, "witness proposed to him, if he would give back all the papers, and pay back all the money he had received, witness would let him have back the timber; and plaintiff said, that he would not do it."

"The court thereupon charged the jury, among other things, that if they found, from the evidence, that a contract of sale for the timber was made, and that, as to the price, the expression 'at six cents per foot' was used in fixing the price, and thus agreed on as the price, then the amount of plaintiff's recovery, if entitled to recover, so far as said contract is concerned, is the sum resulting from making the calculation at six cents per foot, without reference to any average; and this is the case, although the defendant may have intended or thought that said expression meant six cents per foot on a basis, and did not design to give more than that; and from said sum should be deducted all payments made;" also, "that if there was no stipulation as to price, if there was a contract of sale, and the timber was received by the defendant under the contract *and made* (?) by defendant, then plaintiff would be entitled to the

reasonable market value of the property at that time, so far as the price is concerned." To these portions of the general charge of the court exceptions were reserved by the defendant.

"One of the defendant's counsel, in his argument to the jury, commented strongly on the fact that two of plaintiff's witnesses could not read nor write. The court further instructed the jury, in its general charge, that the fact a witness can not read or write does not render him incompetent to testify, and is no circumstance against his honesty; and as to such witness, the jury should look carefully through his testimony, just as they would that of any other witness, and give such weight to him as they believe him entitled to. '*So, as to this witness, who can not read or write: you should give his testimony the same weight, neither more nor less than you would give to the testimony of any other witness, after you have fully considered it and all the evidence; you should treat him as you would any other witness.*' To this part of the charge" (the words italicized) the defendant duly excepted.

The defendant asked the following charges, which were in writing, and each of which was refused by the court: (1.) "If the jury believe, from the evidence in the case, that there was a sale of the timber by plaintiff to said Vinson, as defendant's agent; and that there was a dispute, after the sale, as to the price agreed to be paid; and that the *defendant* [plaintiff], after being fully advised as to this dispute about the price, received and retained the price on a basis of six cents, and refused and declined to surrender the money received, after proposition made to cancel the trade, on a full knowledge of all the facts; then the jury may conclude that he ratified the trade on a basis of six cents, and, should they thus find from all the evidence, then the plaintiff can not recover." (2.) "The plaintiff can not hold on to the fruits or proceeds of the sale of timber on a basis of six cents, and at the same time repudiate the sale; and if the jury believe, from the evidence, that the plaintiff retained and held on to the proceeds of the sale on a basis of six cents, after full knowledge that this was the price the defendant understood he was to pay, after defendant had proposed to turn back the timber to him, and plaintiff to return the money and papers he had received, and plaintiff refused, then plaintiff could not recover." (3.) "If the jury find that the timber was delivered under what the parties supposed to be an open contract, but further find that the plaintiff understood and consented to one proposition, and Vinson (defendant's agent) assented to another and different proposition; then such supposed contract would not be a valid contract in law, and there can not be a sale unless there was a contract between the

parties." The defendant duly reserved exceptions to the refusal of each of these charges.

The admission of the evidence objected to, the charges given, and the refusal of the several charges asked, are now assigned as error.

J. C. RICHARDSON, for appellant.

BUELL & LANE, *contra.*   (No briefs on file.)

SOMERVILLE, J.—The contract for the sale of the timber in controversy in this case is shown to have been express, the terms being fully stated between the contracting parties at the time of the transaction. The controversy is as to which one of the two alleged prices, differing from each other in amount, was agreed upon by stipulation. Under this state of facts, it was not competent to determine the matter by evidence of custom, or usage. " The true office of mercantile usage," as said by Mr. Parsons, " is to interpret the otherwise indeterminate intentions of parties, and to ascertain the nature and extent of their contracts, arising not from express stipulation, but from mere implications and presumptions, and acts of a doubtful or equivocal character; or to ascertain the true meaning of particular words in an instrument, when these words have various senses."—1 Parsons on Contr. (6th Ed.) 547*. Evidence of usage and custom is not permitted, in other words, " to prevail over and nullify the express provisions and stipulations of the contract."—1 Add. Cont. § 244. " It may be," as said in a late case, " that the very object of the contract was to avoid the effect of such usage, and no evidence of usage can be admitted to contradict the [express] terms of a contract, or control its legal interpretation and effect."—*Brown v. Foster*, 113 Mass. 136 ; Lawson on Usages & Cust. p. 371, § 187 ; p. 417. The evidence admitted by the court should have been excluded, on the objection taken by the appellant, and this error must operate to reverse the judgment.

It is a familiar rule of law, that there can be no contract without a concurrence of the minds of the contracting parties, by which their mutual assent is given to some particular thing. This assent must be entire and adequate, comprehending unconditionally the whole, and not merely the part of the proposition suggested as the basis of the contract.—1 Parsons Cont. 476–7*; 1 Whart. Cont. § 4. This principle is, of course, just as applicable to sales of personal property, as to contracts of any other nature. Unless all the terms of the proposed contract of sale, including the *price* when specified, are agreed to, the contract can not be said to be complete. It is true, that a contract

[Wilkinson v. Williamson.]

of sale may be complete and executed, without specifying the price of the article sold. This is the case where the price is either not stated, or is left open for future adjustment by consent, the property being delivered with *the intention to complete the sale.* If there is a failure to agree, a fair and reasonable price may be recovered on a *quantum valebat,* by verdict of a jury.—*Shealy v. Edwards,* 73 Ala. 175 ; 1 Benj. Sales, § 85. But, where the intention of the vendor is to sell at a specified price, and the intention of the vendee is to buy at another and different price, which was specified by him at the time of delivery, and the minds of the contracting parties, through mutual misunderstanding, have failed to agree upon the same proposition as to price, there can manifestly be no legal contract of sale, because each has assented to a separate and distinct contract, and not to one and the same. It follows that, in cases of this character, either party may rescind, upon the discovery of the mistake, by offering to return the price on the one hand, or the property on the other, within a reasonable time.

Where the thing delivered to the vendee, upon the supposition of a sale, has been lost, consumed, or otherwise placed beyond his control by his own fault, so that the parties can not be put in *statu quo,* it would seem that the vendee would be liable for a reasonable price. This would be upon an implied, and not upon an express contract, however, as upon a *quantum valebat.*—1 Benj. Sales (Corbin's Ed. 1884), § 85, NOTE 1 ; *Wittkowsky v. Wasson,* 71 N. C. 451.

An application of these principles makes it clear, that the first and second parts of the charge of the court, to which exceptions was taken, are misleading, and should not have been given, in the exact form in which they appear.

There was no error in the charge of the court, as to the influence which the illiteracy of a witness should exert upon his credibility. The fact that a witness can not read or write certainly does not detract from or impugn his honesty. The fact that he is learned in letters does not, of itself, add anything to the probability of his veracity. Such, at least, is the rule where the facts testified to are equally within the comprehension of the two classes of witnesses.

The mere retention by the plaintiff, of the price paid him for the timber, can not be construed into a ratification of any other contract than such as was actually made, or may be implied by law in the absence of an express agreement. The act of retention is perfectly consistent with the defendant's theory of the contract of sale, as well as with the plaintiff's. If there was no sale, because of a failure to agree upon any price, then no title to the timber vested in the vendee ; and upon his offer to rescind,

VOL. LXXVI.

[Callen v. Rottenberry.]

the plaintiff would be liable to him for the money received on an implied *assumpsit.*

The first two charges requested by the defendant were properly refused. The third should have been given, under the rule which we have announced above.

Reversed and remanded.