# Amos Smith *v.* The State.

*Indictment for Removing Property upon which there was a Lien, with Intent to defraud.*

1. *When title to property passes. on settlement and division between part owners.*—When land is cultivated under an agreement between the owner and an agricultural laborer, to the effect that the crops shall be equally divided between them, and that the former shall have a lien on the latter's half for advances made; and on settlement between them, after the crops have been gathered, and the laborer's half of the corn placed in a crib, it is agreed that the owner shall take this corn, at a specified price per bushel, in satisfaction of the balance ascertained to be due for advances, and he thereupon nails up the crib; the title to the corn becomes thereby vested in him, and his lien is merged in it.

2. *Removal of personal property under lien or claim; larceny.*—A conviction can not be had for the removal, with fraudulent intent, of personal property to which another has a lawful lien or claim (Code of 1886, § 3835), when the proof shows that, by agreement and settlement between the parties, the lien had become merged in the absolute title before the removal. The offense would be larceny. (*Ellerson v. State*, 69 Ala. 1, overruled in part.)

APPEAL from Madison County Court.

Tried before Hon. THOMAS J. TAYLOR.

The facts of the case fully appear in the opinion. Charge number 1 requested by defendant and refused by the court was, "If you believe all the evidence in this case, you cannot convict the defendant on this indictment."

DAVID D. SHELBY, for appellant, cited, *Ellerson v. State,* 69 Ala. 1.

THOS. N. MCCLELLAN, Attorney-General, *contra.*—The owner of the land had "a lien created by law for rent or advances" on his co-tenants share of the crop.—Code, 1886, § 3075. And the removal of the corn to which this lien had attached was a crime—the crime laid in the indictment.—Cr. Code, § 3835. Even if this be not true, the understanding by which this corn was to be applied to the debt and under which it was deposited in a crib for that purpose, gave the prosecutor a "valid claim" thereto, verbal or written, within the meaning of the law.—Cr. Code, § 3835; 78 Ala. 28. Section 3837 of the Code was intended to reach a case of disposal of common property as to which no lien existed. This offense could only be committed *before* a division of the property as afterwards the co-tenancy ceased. The offense denounced by § 3835 however may be committed after the tenancy has ceased—indeed it is doubtful whether it may be committed before at all—since the lien attaches to a *share* of the crop and what this share is can not be identified before division.—*Ellerson's Case,* 69 Ala. 1, is manifestly wrong. There the crop had been divided and the tenancy had ceased. Defendant could not have been convicted under § 3837 because there was then no common tenancy—no other person than Ellerson had the *interest* contemplated by the law *in* the property. The land owner however did have a lien for advances, a right to charge the property. And yet this case was reversed because the land owner *owned* the crop either as master or tenant in common and did not have a lien on it. The learned judge who delivered that opinion entirely overlooked section 3075 of the Code. Had he considered that section he would have found the element of the offense charged—for the lack of which the case was reversed. That case ought to be overruled. That the corn removed was a part of defendant's share of the crop is shown by the agreement he made for its application in satisfaction *pro tanto* of his debt.

[Smith v. The State.]

STONE, C. J.—The defendant was indicted and convicted under § 3835 of the Code of 1886; Form 77. The facts of the case, as the uncontroverted testimony tends to show, were, that McCalley, who owned lands and stock or team, contracted with Smith that he, McCalley, would furnish the land and team, that Smith and his wife were to cultivate the crop, that McCalley was to furnish supplies to Smith, who was to pay for them out of his share of the crop; and that, with this exception, the crops were to be divided between them in equal parts. The crop had been gathered, and, in advance of a settlement between them, Smith's half of the corn had been put into a crib to itself. A settlement was then had of advances made by McCalley, and it was ascertained and admitted that Smith was indebted to him on that account in the sum of twenty-eight dollars. It was then agreed that in part payment of such balance, McCalley was to take Smith's corn, so in the crib,—twenty-five or thirty bushels—at fifty cents per bushel, but the corn was not measured. McCalley thereupon nailed up the crib, and left the place. Smith subsequently abstracted part of the corn, removed it clandestinely, and concealed it in the house of a friend. What effect had this transaction on the ownership of the corn? Did it remain Smith's, McCalley having a lien upon it for his advances, or did the title to the property pass to McCalley? If it had been destroyed without fault, whose loss would it have been?

There are few questions in the law on which more distinctions, and shadings of distinction have been drawn, than that which arises out of the inquiry, what acts are necessary to pass title in a sale of personal property? And we may add, there are few questions on which differences of fact, however small, exert a more controlling influence. One general rule is, that when any thing remains to be done by either party as a condition precedent or concomitant, either as a means of individualizing the subject, fixing the terms, &c., then the contract is executory, and title does not pass. But the matter of weighing, measuring or counting, as a means of determining the compensation, or even the matter of price, although usually conditions precedent to the passing of title, are neither of them universally so. Much depends on the intention of the parties.—*Shealy v. Edwards*, 73 Ala. 175; *Wilkinson v. Williamson*, 76 Ala. 163; 1 Benj. on Sales (4 Amer. Ed.), 324, § 311.

It is fairly presumable from the fact that McCalley was

the landed proprietor, and Smith the laborer or tenant, that the corn was housed on McCalley's land. His conduct immediately after the agreement to surrender and accept the corn in part payment of the balance due him, amounted to an assumption of control, possession and ownership, and the title to the corn thereby vested in him. From a creditor with a lien, he became the owner. This is shown by the further fact, that whether the corn would sell for more or less than fifty cents a bushel, he was entitled to it at that price, entered as a credit on Smith's debt, and Smith was entitled to neither more nor less than that amount of credit, irrespective of the market value of the corn. We repeat, the lien became merged in the title, which accrued to McCalley by virtue of his purchase.

The relations between landed estates and agricultural labor, in parts of what were formerly called slave States, have been more or less tentative, since the emancipation of the African race. With varying modifications, participation in the crops and their products by both parties, has become a common method of utilizing the land, and compensating the laborer. The contracts entered into, having this end in view, have not been uniform. Sometimes the landed proprietor furnishes only the land, while the laborer furnishes the team and labor. Section 3064 of the Code of 1886 defines the relation which this species of contract creates. Other sections of the Code provide for other forms of joint adventure: §§ 3065, 3075. Crops raised on contracts securing to the land-holder and laborer, each, part-ownership in such crop, we have held, constitutes them tenants in common. Yet the statutes confer many civil rights and civil remedies, which, without the statutes, could not be asserted by mere tenants in common. Code of 1886, §§ 3056, 3061, 3064, 3065, 3075, 3076; *Collier v. Faulk*, 69 Ala. 58; *Holcombe v. State, Ib.* 218; *Wilson v. Stewart, Ib.* 302.

And in order to protect the several interests of the respective tenants in common, certain penal enactments are framed to meet the varying phases of criminal interference with the rights these statutes secure. The Code has two separate provisions, intended to provide for and cover the varying criminal aspects of the question:

"§ 3835. Any person who removes or sells any personal property for the purpose of hindering, delaying or defrauding any person, who has a claim thereto, under a written instrument, lien created by law for rent or advances, or any

[Smith v. The State.]

other lawful or valid claim, verbal or written, with a knowledge of the existence thereof, . . . must on conviction be punished as if he had stolen the same."

"§ 3837. Any tenant in common, or any person in any other way interested in any personal property or outstanding crop in which any other person has an interest, who, with intent to defraud his co-tenant, or such other person, sells, gives away, or otherwise disposes of, or conceals, or removes such personal property or outstanding crop, or any part thereof; or, any person who, with such intent, aids or assists in removing or concealing the same, must, on conviction, be punished as if he had stolen personal property of the value of the interest of such co-tenant, or other person having an interest therein."

These two sections were intended to have different fields of operation. The first, section 3835, was not intended to apply to property, or crops held as tenants in common, and undivided. The latter, section 3837, is expressly intended for property held in common, and not divided or separated at the time of the offense. After division, it is inapt and improper. The first applies to cases where the property never was held in common; or, if once so held, where the holding in common has been terminated by a division. So, the same property may, at different stages, be the subject of the offense denounced in each of the statutes copied above. That is, before division, to section 3837; after division, to section 3835.

Section 3835 provides for offenses against property to which another person has a claim, "under any written instrument, lien created by law for rent or advances, or any other lawful or valid claim, verbal or written." In *Ellerson v. State*, 69 Ala. 1, we considered the import of the word "claim," employed in this statute. We said the statute was "not intended . . . to protect the general ownership of personal property. . . . True, the statute employs the word *claim*, as well as the word *lien*, and the former is generally of larger meaning than the latter, and may embrace the general ownership, while the latter usually embraces simply a right to charge property. But it is evident the words are used in a kindred sense, embracing mere charges or encumbrances upon the general ownership, and not the general ownership itself." We think this interpretation clearly correct. To hold otherwise would be to so enlarge the statute as to make it embrace cases of simple larceny at common

[Smith v. The State.]

law. That this could not have been intended, is shown by the penalty the statute provides: to "be punished as if he had stolen the same."

The indictment in this case charges that the defendant, "with the intent to hinder, delay or defraud John E. McCalley, who had a lawful and valid claim thereto under a lien created by law for rent or advances, did remove personal property, consisting of three bushels of corn of the value of five dollars, having at the time a knowledge of the existence of such claim." This indictment would have been an accurate statement and description of the offense imputed, if the corn had remained in the condition it was after the division, and before the sale to McCalley. We have shown it did not remain in that condition, but that the title passed to McCalley. If the defendant was guilty, it was simple larceny, and there was a fatal variance between the indictment and the proof. Charge No. 1, asked by defendant, ought to have been given.

*Ellerson v. State*, 69 Ala. 1, has been referred to. In that case, as in this, the property held in common had been divided, and the laborer's share separated from the land-owner's. In that case, unlike the present one, there had been no sale by the laborer, but the crop remained in *statu quo*, without any merger of the lien. Under the rules declared above, that indictment was maintainable under section 4353, Code of 1876, section 3835, Code of 1886. It was not maintainable under section 3837, for the property, when the offense was committed, was not held in common. That case, so far as it conflicts with the views expressed in this opinion, is overruled.

Cases may arise in which it is not clear whether the imputed crime is common law larceny, or whether it falls under one or the other of the two sections of the Code, 3835 and 3837. Each of these offenses is punished alike. It may become a question whether or not it would be the safer practice to add a count in each of the forms, when any question can arise as to the *status* of the property.

Reversed and remanded.