# Williams *v.* Searcy.

*Action by Vendor of Lands, for Breach of Contract by Purchaser in Failing to Pay as Stipulated.*

1. *Parol evidence explaining words in writing ; payment for land in stock of corporation.*—On a contract for the sale of a tract of land containing 140 acres, at $150 per acre, the purchasers contemplating the formation of a land company, and the written contract stipulating that the vendor should receive $7,000 of the purchase-money in cash, "$7,000 in *original, ground floor, or treasury stock* of the proposed company;" parol evidence can not be received, in an action by the vendor for a breach, claiming more than $7,000 of stock, to explain and qualify the meaning of the italicized words, so as to make him entitled to $14,000 of stock, because the land was put in as stock at a valuation of $300 per acre.

APPEAL from the Circuit Court of Tuskaloosa.

Tried before the Hon. JAMES B. HEAD.

This action was brought by Mrs. P. E. Williams against Geo. A. Searcy, W. C. Jemison, and H. H. Peck; and sought to recover damages for an alleged breach of a written contract between the parties for the sale and purchase of a tract of land. The tract of land contained 140 acres, and the agreed price was $150 per acre, aggregating $21,000. The written contract was signed by both parties, plaintiff and her husband being parties of the first part, and contained this stipulation: "The terms of sale are as follows: parties of the first part bind themselves to make to parties of the second part a warranty deed in fee simple on the 15th February, 1887, upon delivery to them of $7,000 in cash, $7,000 in original, ground floor, or treasury stock of the proposed Tuskaloosa Coal, Iron & Land Company, and three notes for $2,333.33, with interest," &c. The cash payment was made, and $7,000 of stock in said proposed corporation was delivered to Mrs Williams; but her claim in this suit was, that

[Williams v. Searcy.]

she was entitled to $14,0)0 of stock, because the tract of land was put in as capital stock of the corporation at $300 per acre; and she offered to prove by several real estate agents, and other persons engaged in the business of buying and selling lands under similar circumstances, the meaning of the words used in the written contract in describing the payment in stock. The court excluded this evidence, on objection by defendants, and plaintiff excepted, and thereupon took a nonsuit. This ruling is the only matter assigned as error.

FOSTER & JONES, F. S. MOODY, and WM. S. THORINGTON, for appellant, cited 1 Greenl. Ev., 14th ed., §§ 280, 295; Parsons on Contracts, vol. 2, 6th ed., 555; *McKenzie v. Wimberly*, 86 Ala. 198; *Jones v. Anderson*, 76 Ala. 428; *Smith v. Aiken*, 75 Ala. 209; *Gunn v. Clendenin*, 68 Ala. 294; *Cowles v. Garrett*, 30 Ala. 347; *Hatch v. Douglas*, 40 Am. Rep. 154; *Thompson v. Sloan*, 35 Am. Dec. 546; *Miller v. Stevens*, 1 Am. Rep. 139; *Walls v. Bailey*, 10 Am. Rep. 407; *Bradley v. Steam Packet Co.*, 13 Peters, 89; *Boorman v. Jenkins*, 37 Am. Dec. 159; *Sargent v. Adams*, 63 Am. Dec. 718; 106 Ind. 545; *Commercial College v. Kerr*, 3 Brewst. Pa. 196; Lawson on Usages, &c., 368; 100 Mass. 63; 101 N. C. 170; 37 Fed. Rep. 163; 221 N. Y. 670; *Gray v. Harper*, 1 Story 174; *Thorington v. Smith*, 8 Wallace, 1; 5 N. Y. 28; 1 Starkie, 210; 5 Amer. Rep. 234; *Drake v. Goree*, 22 Ala. 409; 106 Ind. 545; 13 Peters, 76.

WOOD & WOOD, contra, cited *Williams v. Evans*, 87 Ala. 725; Const. Ala., Art. XIV, §6.

WALKER, J.—The written contract between the parties was for the sale of certain land, at the price of $21,000. Seven thousand dollars of the purchase-money was made payable in cash, seven thousand dollars in the stock of a proposed corporation, and for the balance the purchasers were to give their three notes, which were to be secured by a mortgage on the land. The complaint alleges a non-compliance with the contract only as to the provision for the payment which was to be made in stock. By the evidence which was excluded the plaintiff undertook to prove that she had not received as much stock as was due to her under the contract. The proposition was to prove the meaning of the term "original, ground floor, or treasury stock," so as to show that the amount of stock which was to be paid was dependent upon the price at which the land purchased by the defendants was put into the corporation when organized. As

[Williams v. Searcy.]

stated in the first count of the complaint, the claim was that "the plaintiff was to receive, as part payment of said land, seven thousand dollars of the stock of said company, provided said land was put into said company at the rate of one hundred and fifty dollars per acre; but, if said land should be put into said company at a greater rate per acre than one hundred and fifty dollars per acre, then, in that event, the plaintiff by the terms of the contract was to receive such an amount of said stock as would bear the same ratio to seven thousand dollars, as the amount per acre at which the land was actually put into said company bore to one hundred and fifty dollars per acre." The complaint alleges that the land was put into the company by the defendants at three hundred dollars per acre, and that the plaintiff has been paid seven thousand dollars of the stock of the company. Evidently her claim is that she should have been paid fourteen thousand dollars of the stock, and the evidence was introduced for the purpose of showing that she was entitled by the terms of the contract to more than seven thousand dollars of the stock. The question presented by the offer to make such proof is, whether it was permissible to show by parol that the amount of stock which the defendants were bound to deliver was different from the amount mentioned in the contract. The stock which was to be paid is mentioned only twice in the written instrument. In the clause providing for the payment of the purchase price, the defendants undertook to deliver "seven thousand dollars in original, ground floor, or treasury stock, of the proposed Tuskaloosa Coal, Iron & Land Company." The only other mention of the stock is the following provision : "It is understood herein that $7,000.00 of paid up certificates of treasury stock shall be delivered to parties of the first part on the 15th day of February, 1887, as aforesaid, if said certificates are ready to be issued, and if not ready, written guarantee of the management of said company that they shall be delivered as soon as ready, will be sufficient." It appears from these quotations that the amount of stock to be paid by the defendants was definitely and certainly ascertained, and that such amount was not to be diminished or enlarged by any contingency. It was not proposed to be proved that the word *thousand*, when used in connection with land company stock, meant more or less than ten hundred. Giving to that word as found in this contract its ordinary and generally accepted meaning, and the plain result is that the writing shows that the defendants undertook to pay $7,000 in stock—that this amount is absolutely fixed. There is no hint in the contract that the amount

[Williams v. Searcy.]

should be greater or less in any event. Certificates for only $7,000.00 of stock could be demanded under the provision on that subject. Parol proof that the parties meant that a larger or a smaller amount of stock should be paid in certain contingencies necessarily involves a contradiction of the terms of the written contract. If the stock, as actually issued by the corporation when formed, was not such as was stipulated for, the plaintiff should have declined to receive it, and she would then have had her action for a breach of the contract. Instead of pursuing this course, she accepted $7,000.00 of the stock as issued. She retains that stock, and does not now complain that it is not the kind contracted for; but her claim is that she is entitled to more than $7,000.00 of it.

The only kind of corporate stock authorized by our law is such as is issued for money, labor done, or money or property actually received.—Art. XIV, § 6 of the Constitution of Alabama; *Elyton Land Co. v. Birmingham Warehouse & Elevator Co.*, 92 Ala. 407; 9 So. Rep. 129. Where the law thus requires that the stock of corporations shall represent actual values received by it, it would be as anomalous to admit parol evidence to show that a written contract for the absolute payment of a named amount of stock was, in certain contingencies not mentioned in the writing, intended to mean another and wholly different amount, as it would be to admit such evidence to vary or contradict, as to the amount, a written obligation, without conditions, to pay a certain sum of money. No action would lie on the contract in reference to the stock, if the stipulation on that subject meant that the payment should be made in stock issued in violation of law.— *Williams v. Evans*, 87 Ala. 725.

It is claimed for the appellant that the contract can not be regarded as providing for the payment of any but lawfully issued stock. Conceding that meaning to the provision in question, and the result of the unequivocal language of the contract is to provide, absolutely and unconditionally, for the payment of a specified amount of a certain described thing. A simple promise to pay seven thousand dollars of lawfully issued stock can not also mean a promise to pay some wholly different amount of the same kind of stock. The evidence which was offered to show that the parties intended that, under certain contingencies, there should be paid an amount different from that mentioned, was in direct contradiction of the express terms of the written contract; and it was properly excluded, because parol evidence was inadmissible to alter, vary or contradict the writing.— *Wilkinson v. Williamson*, 76 Ala. 163; *Bulwinkle v. Cramer*, 13 Am. St. Rep. 645;

*Smith v. Clews*, 11 *Ib.* 627, and note; 3 Brick. Dig., pp. 291, 417. It was not competent to prove by parol that the seven thousand dollars in stock mentioned in the contract meant more or less than that amount. The evidence having been offered for the purpose of supporting a contradiction of the terms of the written instrument, it was properly rejected.

Affirmed.