ANN CARNEY, Adm'x, Appellant, *v.* CORNELIA P. NEWBERRY, Adm'x, Appellee.

ERROR TO THE SUPERIOR COURT OF CHICAGO.

The failure of one of the parties to a contract to fulfill his agreement, authorizes the other party to rescind the contract.

But such failure does not of itself destroy the contract. The other party must give notice, within a reasonable time, of his intention to repudiate it.

THIS was an action of assumpsit by appellee, administratrix of the estate of Amasa S. Newberry, against appellant, administratrix of James Carney.

The declaration contains two counts. The first sets forth the following agreement, to wit: "This agreement, made this 16th day of July, 1853, between A. S. Newberry, of Oneida county, New York, and James Carney, of Chicago, witnesseth: That said Newberry agreed to deliver to said Carney, on some wharf in the city of Chicago, in the autumn of each year, for seven years next ensuing, commencing with the present year, five thousand five hundred pounds of good, merchantable hops; and in the spring of each year, for a like period, commencing with the year one thousand eight hundred and fifty-four, two thousand five hundred pounds, of a like quality; and the said Carney agrees to pay for the same, on delivery, at the rate of fifteen cents per pound for those delivered in the autumn, and fifteen and a half cents for those delivered in the spring;" and states, in substance, that said Newberry has always been ready and willing, and offered to perform the agreement aforesaid in all things; and that on the first day of October, 1856, he delivered for said Carney, under said agreement, at a wharf in said Chicago, 5,500 pounds of good merchantable hops, and that on the first day of March, 1857, he delivered the said quantity of like good, merchantable hops on a certain wharf in Chicago, according to said contract, of all which said Carney had notice, and requested said Carney to accept and pay for the same. Breach—that said Carney in his lifetime, and the said Ann Carney, administratrix, did not, and would not, at any time, accept said hops, or pay for the same.

The second count contains essentially the same matter as the first; and states further, that the plaintiff, from the time of making said agreement, until the refusal and wrongful discharge by the defendant, was ready to perform said agreement; that said Carney, in his lifetime, accepted the hops according to said agreement, up to the autumn of 1856; that from that time hence hitherto, he has wholly refused to receive said hops or any part thereof, and has wrongfully prevented and discharged said Newberry from the further performance of said contract, whereby he has lost the benefits which might and would have arisen from the complete performance of the same. States, that on the 16th of July, 1857, said Newberry was forced to sell and did sell said hops for a much less price than was to be paid by Carney; that the loss thereon was $500, besides costs and charges of such resale, which amounted to $100.

Plea—the general issue, and joinder.

On the trial, the plaintiff proved an offer to deliver 5,515 pounds of hops to defendant, and a refusal to receive and pay for them. The evidence was conflicting as to the quality of the hops.

The court then gave the following instructions to the jury, on the part of the plaintiff, to wit:

1. That if Newberry tendered hops under the contract in the spring of 1856, in good faith, but such hops proved inferior and not of the quality required by the contract, such failure would not release nor could it be taken advantage of by the defendant, unless it was willful or intentional on the part of said Newberry; and the said plaintiff might make tender of hops under the contract the next fall, and at subsequent times of delivery, and claim payment therefor. In such case, the defendant may offset any damages sustained by reason of the failure to deliver as required by the contract.

2. The measure of damages in this case is the difference between the contract price and the market price at the time of the breach complained of, and if the jury find for the plaintiff, they will estimate the quantity of hops which had not been delivered, and give the difference between the market price and contract price, as damages, on so much of the contract as remained to be performed.

To the giving of which, defendant then and there excepted.

Plaintiff then introduced and read the original agreement.

The cause was then submitted to the jury, who brought in a verdict for the plaintiff, and assessed damages at eleven hundred and twenty-five dollars, whereupon the defendant moved for a new trial.

But the court overruled the motion for a new trial, and ren-

dered judgment upon said verdict, and the defendant then and there excepted.

Subsequent to the bringing in of the verdict, the plaintiff remitted therefrom $125, and judgment was entered for $1,000.

RUCKER & PAGE, for Plaintiff in Error.

SCATES & CLAPP, for Defendant in Error.

CATON, C. J. The first instruction given for the plaintiff, we think, was erroneous. It was this: "That if Newberry tendered hops, under the contract, in the spring of 1856, in good faith, but such hops proved inferior and not of the quality required by the contract, such failure would not release, nor could it be taken advantage of by the defendant, unless it was willful or intentional on the part of the said Newberry; and the said plaintiff might make tender of hops, under the contract, the next fall and at subsequent times of delivery, and claim payment therefor."

By the terms of the contract, the plaintiff's intestate was bound to deliver a certain quantity of good, merchantable hops, in the spring and fall of each year for several successive years. Those tendered in the spring of 1856, the proof shows, were not merchantable, and were for that reason declined, and the instruction announces the proposition, that if the party tendering the hops did so in good faith, believing them to be good, this failure to perform the contract would not justify the defendant to abandon the contract, and refuse to receive any more hops under it. The question of good or bad faith could have nothing to do with any of the consequences legitimately flowing from a failure to deliver the hops, according to the terms of the contract. If the good faith would not be an answer to an action for damages, for the breach of the contract, no more would it be to any other remedy to which the defendant was entitled. Here was a failure to fulfill the contract for the delivery, of the spring of 1856, as total and complete as if no hops at all had been tendered. It was not a case where a few pounds, or even a single bale, was inferior, but all were bad, or at least the proof would have justified the jury in so finding. This was, then, a substantial breach of the contract, for which we think the defendant would have been justified in repudiating or abandoning it, and refusing to receive any more under it. If one failure was not sufficient, how many would be? Must she wait till two, or three, or four failures had occurred before she was authorized to abandon this contract, and make other provision for future deliveries? If that failure would not have

justified this course, then a greater number would not, and she must be kept in suspense for the whole time. The simple failure of itself did not rescind the contract, and absolve one party from tendering and the other from receiving the hops in future, but it authorized the party to rescind it. To avail herself of this right, a positive, affirmative act was required,—a notice to the other party not to deliver any more hops, for she had rescinded the contract,—and this, too, within a reasonable time after the failure. She could not lie by till the next lot was actually tendered, and then repudiate the contract and refuse to receive them. Whether she did rescind the contract, as she had a right to do, is not for us now to inquire. That will be for the jury to determine upon another trial. We see no error in the rule laid down for estimating the damages.

The judgment must be reversed, and the cause remanded.

*Judgment reversed.*