# Alabama Iron Works *v.* Hurley & Brown.

*Action for Breach of Special Contract.*

86　217
99　233
86　217
128　235

1. *Damages for breach of contract; evidence as to value of manufactured article at home or foreign market.*—In an action for the breach of a contract for the manufacture of a machine to be used for agricultural purposes, the manufacturer being informed by plaintiff that they were intended for sale in Louisiana, the plaintiff may prove the market price of the machines in Louisiana, as an element of damages.

2. *Same; duty of purchaser to procure article elsewhere.*—On the failure of a vendor or manufacturer to furnish the articles as stipulated, it may be the duty of the purchaser to procure them elsewhere in the market, thereby reducing the damages to the difference in price; but this principle can not be invoked, where it appears that the defendant's breach of contract was not and could not be known until too late to procure the articles elsewhere, and that the plaintiff nevertheless made fruitless efforts to procure them elsewhere.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. LEROY F. BOX.

This action was brought by Hurley & Brown, suing as partners, against the Alabama Iron Works, a private corporation, to recover damages for the breach of a special contract, which, as reduced to writing, and signed by both parties, was in these words: "Birmingham, Ala., Jan. 13, 1888. Be it it hereby agreed between the Alabama Iron Works and Hurley & Brown, that the Alabama Iron Works will furnish to said Hurley & Brown, the *Hurley Fertilizer Distributor*, at $5.00 apiece, to be delivered in such quantities as may be required by said Hurley & Brown; and said Alabama Iron Works agree to put up said machines in good style and workmanship, and said Hurley & Brown agree to pay one half of said price accompanying the order, and the balance when the goods are ready for delivery." The breaches assigned were, the defendant's failure to deliver the machines as ordered, and the inferior quality of the few that were delivered. One of the plaintiffs, by whom the contract was negotiated, testifying as a witness for them, was allowed by the court to state, against the objection and exception of the defendant, that the market price of the machines in Birmingham was $15, and in Louisiana, where

they were intended for sale (as he had informed defendant), was $17.50, being the Birmingham price, with cost of transportation added; and he detailed the efforts made by him to procure the machines, in Birmingham, Atlanta, Louisville and elsewhere, after defendant had failed to furnish them as stipulated.

The defendant requested the following charges in writing, duly excepting to the refusal of each: (1.) "If the defendant failed to manufacture the machines according to contract, it was plaintiffs' duty to have them manufactured elsewhere, on such reasonable terms as they could; and the measure of damages is the difference between the contract price and what it would have cost plaintiffs to have the machines constructed, with such further damage, if any is shown, as resulted directly or proximately from any delay caused by defendant's breach of contract." (2.) "The measure of damages in this case is the difference between the contract price of construction and what it actually cost, or would have cost plaintiffs, to have them constructed elsewhere." (3.) "It was plaintiffs' duty, on defendant's failure to supply the machines as ordered, to have them made elsewhere, and they would be entitled to recover, if defendant failed to comply with the contract, only the difference between the contract price and what plaintiffs could have had the machines constructed for elsewhere." (4.) "The measure of damages in this case is the difference between the cost of the machine and its market value in Birmingham or vicinity." (5.) "The value of the machine in Louisiana can not be considered by the jury in this case." (6.) "If the jury believe all the evidence, they can not find for the plaintiffs.".

The refusal of these charges, and the admission of the evidence objected to, are now assigned as error.

R. H. PEARSON, for appellant.

WHITE & WEATHERLY, contra.

STONE, C. J.—The Alabama Iron Works agreed in writing with Hurley & Brown to manufacture for them, and furnish to them, "in such quantities as may be required by said Hurley & Brown," certain machines known as "The Hurley Fertilizer Distributer," at $5.00 a piece; the machines to be put up in good style and workmanship. By the con-

tract, "Hurley & Brown agreed to pay one half of said price accompanying the order, the balance when the goods are ready for delivery." The foregoing is the substance of the contract, dated January 13, 1888.

On the day the contract was entered into, the uncontroverted testimony is, that one order for twenty-five machines was placed, and with it forty dollars as an advanced payment. This, it is shown, was accepted by the Alabama Iron Works, as a sufficient advance payment for this order. Soon afterwards, two other similar orders were placed of twenty-five machines each, and with each of them fifty dollars, which was also accepted as sufficient advance payment. The present action by Hurley & Brown counts on an alleged breach of said contract, first, in not manufacturing and delivering the machines, and, second, in delivering only six machines, which were of inferior material and workmanship. The testimony, with little if any conflict, tends strongly to show that the Alabama Iron Works violated and broke its contract, and the chief question contested was the measure of damages.

Pending the negotiations, if the testimony of Brown be believed (it was not controverted), the officers of the Alabama' Iron Works were informed that many of the machines ordered were for sale and use in Louisiana. One of the orders was for that market. There was no error in receiving proof of the market value of the machines in Louisiana, for two reasons: First, it was the same as the proven value in Alabama, *plus* the transportation. This testimony could not possibly do any injury, as it was, at most, redundant. Second, it was right in itself, for the Alabama Iron Works were notified of the market for which they were intended, and that intended use thereby became an element of the injury sustained.—*Snow v. Shomacker Manf. Co.*, 69 Ala. 111, 118-9; *Daughtery v. Amer. Tel. Co.*, 75 Ala. 168.

If there had been testimony tending to show, or, if from the nature of the machines we could infer, that Hurley & Brown could have supplied their want, and in proper time, at some other manufactory, then it probably would have been their duty to do so, and thus have lightened the burden of the breach which rested on the defendant. The uncontradicted testimony, however, is, that they did not and could not learn that the Iron Works Company would violate their contract, until it was probably too late to make other arrangements. Yet, notwithstanding this delay, Hurley &

[Clark v. Dunham Lumber Company.]

Brown made prompt and diligent efforts at several manufacturing centres—indeed, they were extra diligent, if the testimony be true, and failed at every point. Charges asked, seeking to raise this question, were all rightly refused. They are all opposed to the trend of the testimony, and would have tended to mislead. For that reason, if for no other, they were rightly refused.—*Bell v. Reynolds*, 78 Ala. 511.

There is nothing in any of the questions raised.

Affirmed.