# Foley *v.* Felrath.

*Action on Account for Goods and Merchandise Sold.*

1. *Definition of sale; when title does, and does not pass.*—A sale is the transfer of the absolute or general property in a thing for a price in money. If anything remains to be done by either party to the transaction, before delivery, as, to determine the price, quantity or identity of the thing sold, the contract is merely executory, and the title does not pass. If the sale is complete, and the goods perish without the fault of the seller, the purchaser is bound to pay the agreed price.

2. *Difference between option to purchaser, and option to return goods.* An option to purchase goods at will, is very different from an option to return them if transferee should not like them; in the first case the title does not pass till the transferee elects to take them, if seasonably done; while, in the other case, the title passes, subject to the right to rescind and return.

APPEAL from Mobile Circuit Court.
Tried before the Hon. J. T. JONES.

PILLANS, TORREY & HANAW, for appellant.

1. The mailing of Foley's assent to Felrath's letter reconsidering and agreeing to accept the goods on condition named, constituted a complete purchase, and the goods became Felrath's, and were at his risk.—*Magee v. Billingslea,* 3 Ala. 679; *Leonard v. Davis,* 1 Black. 476–483; *Tome v. DuBois,* 6 Wall. 548–554; *Cleveland v. Williams,* 94 Am. Dec. 274.

The goods were forwarded at Felrath's request, so that possession as well as title was in him.—*Allen v. Agee,* 3 Am. St. 206; 52 Ala. 252; 71 Am. Dec. 409; 12 Ala. 520.

2. The reservation by Felrath of a right to return high-priced goods did not prevent the title passing to him meanwhile. The law is plain on this.—*Allen, Bethune & Co. v. Maury & Co.,* 66 Ala. 10–17; *Wales v. Howison,* 93 Ala. 375; *Bretz v. Diehl,* 2 Am. St. R. 706–709; *Chickering v. Bastress,* 17 Am. St. 309–311; 2 Benj. Sales, 4th Am. Ed. Corbin, pp.

Vol. 98.

[Foley v. Felrath.]

794–796, § 915 n. 30.; 3 Am. and Eng. Ency. 433 ; *Gunter v. Lecky,* 30 Ala. 591 ; 1 Pars. Cont. 450 (star page) ; *Lyon v. Lennon,* 106 Ind. 567 ; *Coker v. State,* 91 Ala. 92 ; *Hunt v. Wyman,* 100 Mass. 198 ; *Hurd v. West,* 7 Cowen 752 ; *Buswell v. Bicknell,* 35 Am. Dec. 262 ; *Cocker v. Gullifer,* 69 Am. Dec. 118 ; *Powder Co. v. Burkhardt,* 97 U. S. 110. Hence as the goods were lost before the exercise of the option to exchange part for other goods, the buyer owes the price.—*Carter v. Wallace,* 32 Hun. N. Y. 384 ; *Standard Oil Co. v. Van Etten,* 107 U. S. 325.

FAITH & ERVIN, for appellee, insisted that there had been no consummated sale of the goods, vesting title in the appellee ; that appellee had agreed to accept the goods on certain conditions relating to selecting a part of the goods after they should come into his possession.; that until that event, until he had exercised that right of selection, the title to all the goods remained in the seller, and the loss was therefore his, and not the buyer's, or appellee's, citing.—*Braddock Glass Co. v. Irwin,* 25 Atlantic R. 490 ; *Millhiser v. Erdman,* 98 N. C. 292 ; s. c., 2 Amer. State R. 334 ; also, *Copeland v. Bosquet,* 4 Wash. C. C. 588 ; *Lester v. McDowell,* 18 Penn. 91 ; *Harris v. Smith,* 3 S. & R. 20 ; *Russell v. Minor,* 22 Wend. 659 ; *Whitney v. Eaton,* 15 Gray 225 ; *Hirshcorn v. Canney,* 98 Mass. 149 ; *Seed v. Lord,* 66 Maine 580.

HARALSON, J.—Foley sued Felrath for $502.56, for merchandise, goods and chattels sold by him to said Felrath on the 1st of August, 1892 ; and on open account, and on account stated for like amounts.

It was claimed by the plaintiff, and he so testified, that he was a manufacturer of gold pens in New York city; that on the 8th March, 1892, he was in Mobile, Alabama, and while there was in the store of defendant, and sold him a bill of goods, in his line, for $502.56; that the goods were, accordingly shipped to the defendant by plaintiff, by the Adams Express Company, for which said Company gave him a receipt; that at the time of the sale, its terms and details were written down by plaintiff, one-half to be secured by defendant's note, at four months, and one-half at six months, the last note, if all the goods were not sold in that time, might be paid in goods not sold, at defendant's option; that the sale was absolute, and not conditional ; that defendant, after he received the goods, notified him that he had returned them by the express company, and afterwards, the company brought the box of goods to

plaintiff, and he would not receive them, because they were defendant's.

The defendant contradicted this evidence of the plaintiff, and testified, that plaintiff came into his store, and representing himself as a large manufacturer of gold pens and novelties in that line, asked him to take the agency for him for the sale of his goods in Mobile, and as the result of their interview, defendant agreed to accept the agency, and that plaintiff should ship him, as such agent, $500 worth of his goods for sale; that plaintiff represented that such goods should be "good sellers," and told defendant, that he would not be required to pay out any of his own money for the goods, and plaintiff was to send out at his own expense, private letters and cards, the printing to be paid for by defendant; that he agreed to take the agency, provided the goods shipped were as represented, and he was to pay no money; that plaintiff said, that he could not let his goods go on four months time, unless defendant would give him a note which he could use as collateral to borrow money, and, on the assurance that defendant would not have to pay the note, for the reason that before it matured, he would have sold goods enough to meet it, he gave him a note for $250, not as purchase money, but as accommodation, and plaintiff was to send the goods for examination before he would accept them; that they were to be such as would be salable in the Mobile market; that the goods afterwards came by express, according to invoice, sent with them, but were immediately returned to plaintiff, because not such as were promised to be sent, and were old style and unsalable.

A correspondence immediately sprang up between them, in which the one contended there was an absolute sale, and he would not receive the goods back, but would hold the other responsible for their value; and the other, that the transaction was not a sale but an agency, and he would have nothing more to do with the goods and would not pay for them.

Finally, however, as the result of this correspondence, the defendant wrote to the plaintiff, under date of April 21, 1892, to the following effect: "I have reconsidered the matter, and will accept the goods on condition, that you exchange some high priced goods, which I will return, for cheaper articles, more suitable for this market. Please favor me with the retail selling price of said line of goods in the North. I do not understand the invoice you sent me, and, therefore, would like for you to send me another, more ex-

plicit, giving the net retail price, and then allow me the discount; also, send the show case as promised. Let goods come along."

To this letter, the plaintiff, on April 25, after it was received, replied : "Thanks. Had much trouble, but all right now. Have sent you show case, and have told express company to deliver your goods. Most are marked and you will find retail prices in this green circular, as sold by dealers here. You can exchange goods at any time. I was careful to send only good sellers, and if not, will make all to your satisfaction. I will go on mailing private letters as soon as I get answer to this. Open up goods at once, and put out big pen, and push sales, and send me this note, and let us be good friends."

The evidence tends to show, that the goods were shipped back to defendant by the express company, as requested by him, and in transit were lost or destroyed in a wreck. The defendant contends, that the loss is the plaintiff's, that there was no delivery of the goods, for the reason, that before accepting them, he had the right to select from the lot such as he would return, according to the condition annexed to his agreement for them to be returned to him, and the sale, till this was done, was incomplete. On the other hand, the plaintiff maintains that the sale and delivery were complete, and the defendant is liable for the price of the goods, and must, himself, look to the express company for damages, if it has incurred liability for the non-delivery of the package.

The evidence tends to show, and it is without conflict, as to the point, that the same package of goods, and the same goods that had, in the first place been shipped to the defendant at Mobile by the plaintiff—which he received and examined, the invoice and prices for which had been furnished to him by plaintiff, and which he returned to plaintiff as not coming up to representations—were the identical package and goods which defendant, upon reconsideration, instructed the plaintiff to have returned to him by the express company. There was no mistake as to identity, quality and price of goods. There had been, as we have seen, a spirited dispute between the parties, as to the character of the transaction between them, the plaintiff maintaining all the while, that defendant had purchased the goods, and that they were his property. The defendant finally yielded to plaintiff's contention and wrote, "I have reconsidered the matter, and will accept the goods, on condition that you exchange some high price goods, which I will return for cheaper articles, more suitable for this market." What was

it, defendant had reconsidered? It could have been nothing but the very thing the plaintiff had been so pertinaciously pressing on him—that the goods were sold and delivered to him, that the transaction was no agency, and he was liable and must pay for what he had bought. He yielded the contention, and said "I will accept the goods. . . . . Let goods come along."

A sale has been defined to be "A transfer of the absolute or general property in a thing, for a price in money."—Benj. On Sale, § 1. If any thing remains to be done by either party to the transaction before delivery, as for example, to determine the price, quantity or identity of the thing sold, the title does not vest in the purchaser, and the contract is merely executory. If the sale is complete, and the goods perish, without the fault of the seller, the purchaser is bound to pay the agreed price.—*Magee v. Billingsley*, 3 Ala. 679: *Mobile Sav. Bank v. Fry*, 69 Ala. 348; s. c. 75 Ala. 473; *Allen, Bethune & Co. v. Maury & Co.*, 66 Ala. 17; *Wailes v. Howison*, 93 Ala. 375; *Cleveland v. Williams*, 94 Am. Dec. 274; 2 Kent, 496.

In *Allen, Bethune & Co. v. Maury & Co., supra*, we said: "Where, however, goods are sold and delivered, the terms of sale being specified, and the vendee reserves the right to reject or return, the title passes, liable to be divested by the exercise of this option to rescind expressed within a reasonable time."

In *Greene v. Lewis*, 85 Ala. 221, it was held, that where a horse was sold and delivered to a purchaser, for a reasonable price, to be afterwards agreed on, the title at once passed; and the fact that the parties could not afterwards agree on a reasonable price made no difference in the character of the transaction. The court, in passing upon the question, stated, "The rule is settled, that the title to personal property may pass to a vendee, without fixing an absolute price, if the circumstances attending the transaction satisfactorily show such to be the clear intention of the contracting parties.—*Shealy v. Edwards*, 73 Ala. 175; *Wilkinson v. Williamson*, 76 Ala. 163. An option to purchase, if the party to whom the goods are transferred should like, is very different from an option to return the goods, if he should not like them. In the first case, the title will not pass until the transferree determines the option, if seasonably exercised; in the other, the title passes subject to the right to rescind and return, which is in effect a right to re-sell to his vendor.—2 Benj. on Sales, p. 796, § 915, n. 30; *Buswell v. Bricknell*, 17 Me. 344; s. c. 35 Am. Dec. 262; *Hunt v. Wyman*,

[Normant v. Eureka Company.]

100 Mass., 198. The case in hand was clearly one of a sale with right to rescind and return, as to the high priced goods.

The contract of sale between the parties, as we have seen rested at first in parol, about the terms of which they disputed. They eventually agreed upon its terms, and that agreement is in writing. There could no longer remain any dispute about it, and no parol evidence was needed to construe it. Its construction became a question of law for the court, and not for the jury to determine.—*Jones v. Pullen,* 66 Ala. 306; *Claghorn v. Lingo,* 62 Ala. 230; *Bernstein v. Humes,* 60 Ala. 582; *Guilmartin v. Wood,* 76 Ala. 209.

It is unnecessary for us, in the view we take of the case, to consider any of the charges given, to which exceptions were reserved, or any of the assignments of error, except the one based on the request for the general charge in favor of the plaintiff. The evidence is undisputed and in writing, as to what the contract was, and as its proper construction makes it one of sale and delivery of goods, the court should have given the general charge for the plaintiff, as requested.

Reversed and remanded.