# McFadden & Bro. *v.* Henderson *et al.*

*Action for Breach of Contract of Sale.*

1. *Contracts; action by principal on contract by agent.*—When an agent makes a contract for the benefit of his principal, such principal may sue on it in his own name, though his name was not disclosed in the transaction.

2. *Same; when construction a question of law for the court.*—In an action to recover for the breach of a contract, where there is no conflict in the evidence as to what is the contract involved in the suit and its terms and conditions are certain, the construction of such contract is a question of law for the court to determine and not for the jury.

3. *Same; construction thereof.*—A contract will be construed to be unconditional rather than conditional, unless it is shown tnat it was fairly understood by the parties that the stipulation therein relied on to show its conditional character is an essential element in the performance of the contract.

4. *Same; when performance must be within reasonable time.* When there is no time fixed by a contract for its performance, the law requires that it must be performed within a reasonable time; and what is a reasonable time is to be determined by all the facts and circumstances of each particular case.

5. *Same; when time not of the essence of the contract.*—Time is not of the essence of a contract unless it is so expressly stated by the parties, or unless it naturally follows from the circumstances of the particular case.

6. *Same; when contract is executory.*—In a contract of sale, if anything remains to be done by either party to the transaction before delivery, as for example, to determine the quantity or quality of the thing sold, the title does not vest in the purchaser until such determination, and the contract is merely executory.

| | |
|---|---|
| 128 | 221 |
| 135 | 417 |
| 128 | 221 |
| 136 | 309 |
| 137 | 295 |
| 128 | 221 |
| 141 | 504 |
| 128 | 221 |
| 143 | 593 |
| e143 | 594 |

[McFadden & Bro. v. Henderson *et al.*]

7. *Same; construction of contract for sale of cotton.*—Where an offer made for 1,500 bales of cotton at a certain price includes the proposition that all of the cotton will be taken which was not below a particular grade, to which the seller replied: "1,500 bales of cotton is yours; come at once," there is an unconditional acceptance of the offer of purchaser, and the contract of sale is executory, and imposes upon the purchaser the duty of accepting and paying for the cotton within a reasonable time.

8. *Same; right to rescind executory contract.*—Where an executory contract of sale does not specify the time of performance, the seller has no right to rescind for delay on the part of the purchaser until he gives notice that unless performed within a specified time, which must be reasonable, the contract will be rescinded.

9. *Breach of contract of sale; measure of damages.*—In an action for the breach of a contract of the sale of cotton, when it is shown that the seller has failed and refused to deliver to the purchaser the cotton sold, the measure of damages, if the price has not been paid and the purchaser can readily go into market and supply himself with the same grade of cotton, is the difference between the agreed price and the market price of the cotton at the time and place of delivery, with interest; but if, at the time and place of delivery, the purchaser can not supply himself with the cotton, the measure of damages is the excess in cost of replacing the cotton, after the refusal to deliver, over the contract price when repurchased, as cheaply and expeditiously as possible.

10. *Same; same; admissibility of evidence showing value of cotton.* In an action to recover damages for the breach of a contract of the sale of cotton, evidence that after being notified by the defendants of their refusal to deliver the cotton as purchased, the plaintiffs went into the market and purchased the same quantity of cotton as cheaply and quickly as they could, but at a loss of so much per bale, is admissible as tending to show to what extent the plaintiff was damaged by the breach of the contract as alleged.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. JOHN P. HUBBARD.

This was an action brought by the appellants, George H. McFadden & Bro., against the appellees to recover $3,000 for the alleged breach of a contract of sale of 1,500 bales of cotton. The defendants pleaded the gen-

eral issue and several special pleas. To these special pleas demurrers were interposed, which were sustained by the court. The cause was tried upon issue joined upon the plea of the general issue.

On the trial of the case the evidence disclosed the following facts: The contract for the breach of which plaintiffs sue in this case was made with defendants through John Gatling, the agent of plaintiffs. On November 15, 1899, defendants wrote said Gatling, to come to Enterprise, Ala., and look at a lot of cotton they had there, amounting to fifteen or sixteen hundred bales, and they would give Gatling preference when they sold the same. This was the beginning of the communication between said Gatling, as plaintiff's agent, and the defendants, which finally led to the consummation of the contract sued on in this case. The contract was effected by correspondence in the shape of telegrams and letters. On November 20, 1899, de-defendants telegraphed said Gatling as follows: "Make us best offer you can our lot." In reply said Gatling telegraphed as follows: "Offer six seven-eights f. o. b. round nothing below middling subject to reweights answer immediately." On the same day defendants telegraphed said Gatling as follows: "How long will you give us on your offer?" In reply Gatling telegraphed: "Will give half hour on limit." Defendants replied by telegram: "Squeeze your limit one-sixteenth will try to trade with you, lot is at least one-sixteenth better than you are figuring on." Gatling replied: "Can't increase offer answer as soon as possible am expecting limit to be cut." Defendants replied: "Fifteen hundred bales cotton is yours come at once we want the money out of it and the insurance stopped." Gatling replied: "Order cotton out at once unless it rains man will be down as soon as possible confirm sale by letter." All of this telegraphic correspondence took place on the 20th of November, 1899. On November 21, 1899, Gatling telegraphed defendants: "As soon as you get cotton lined out ready for weighing and classing wire George Beale here I go to Brantley this evening." On said November 21 defendants wired Beale: "We are ready to deliver

cotton." Beale replied: "Will come down as soon as our weigher gets there to weigh cotton reweighing must not begin until he arrives." On November 21, 1899, defendants wrote Beale, who was the plaintiff's agent at Elba ,and had taken the place of Gatling, as follows: "We expect you tomorrow morning without fail to commence receiving cotton. We are ready to deliver. We have good beams and government standard seal weights to test scales and man to weigh it." On November 22 defendants wrote said Beale as follows: "We were disappointed that you did not show up here on arrival of train this morning. It costs big money to carry 1,500 bales of cotton, and we want to deliver it and get our money out of it. Will certainly expect you tomorrow morning to go to work on it. Don't fail to come." On the 24th of November following Beale telegraphed defendants as follows: "Sorry to disappoint you impossible to come have not finished shipping here yet. Communicate headquarters Montgomery perhaps they will send man." 10:20 same day A. M. defendants wired said Beale: "You have no cotton with us." And at 10:50 A. M. of same day Beale wired defendants: "Yours we expect to begin receiving cotton tomorrow sure." And on the same day Beale wired defendants as follows: "Since wiring you this morning have wire from Montgomery that weigher and crew will be down on tonight's train." On November 24, 1899, plaintiffs through their agents, were at Enterprise and demanded of defendants the 1,500 bales of cotton purchased, or agreed to be purchased as aforesaid, and defendants refused to deliver the same, claiming plaintiffs had violated the contract. They also demanded said cotton on the 25th of November and defendants refused to deliver the same, and on that date sold the cotton to another party and afterwards delivered it in accordance with said sale. Defendants had possession of said cotton on the 24th and 25th days of November, when plaintiffs demanded its delivery to them. It is further shown that the average weight of a bale of cotton in the vicinity of Enterprise in November, 1899, was about 500 pounds; and that this partic-

ular lot of cotton, 1,500 bales, averaged 487 1-3 pounds per bale.

The testimony for the plaintiffs further tended to show that on November 21 and 22 it rained at Enterprise, Ala., and in the vicinity thereof, and that the 1,500 bales of cotton were not in shape for delivery either on the 21st, 22d, 23d, 24th or 25th days of November, 1899. Most of it was out of doors and set on its end, but did not have space sufficient between each bale so that it could be sampled. It is further shown that a bale had to be in a condition to to be turned from one side to the other for sampling and weighing. The testimony for the plaintiff further showed that the cotton of the grade and quality agreed to be bought by the plaintiffs for the defendants was worth, free on board cars at Enterprise, Ala., on November 24th, 1899, from $7\frac{1}{2}$ to 7 3-16 cents per pound. Plaintiffs offered to prove that as soon as they ascertained that defendants refused to deliver the cotton and claimed the right to rescind the contract, they went into the market and repurchased 1,500 bales of cotton as expeditiously and cheaply as it could be bought, and that the additional cost of such repurchase over the contract price with defendants was 2 per bale; but the court refused to allow this proof, and plaintiffs excepted. Plaintiffs further offered to show that as soon as this contract was made with defendants they resold the same, and that they replaced it after the refusal to deliver at an additional cost of $2 per bale; but the court refused to allow this proof, and plaintiffs excepted. The plaintiffs further offered to show that with all possible expedition it would have taken at least five days for the defendants to have delivered, on the one hand, and the plaintiffs to have received, this cotton; but the court refused to allow this proof, and the plaintiffs duly excepted. Plaintiffs offered evidence showing that on November 24th and 25th they were ready, able and willing to receive and pay for the cotton in accordance with the terms of the contract. The testimony for the plaintiffs further tended to show that there were about 500 bales of cotton at Enterprise at this time other than the cotton

involved in this suit. Plaintiffs further offered to show the general custom in receiving cotton in the day time, and not at night, but the court refused to allow it, and the plaintiffs excepted.

The testimony for the defendants tended to show that at 1 P. M. on November 21, the cotton was in shape for delivery, and that they were ready, able and willing to deliver it at 1 P. M. on the 21st, that no one came to receive the cotton on the 21st, 22d, or 23d of November; that they did not receive any message from plaintiffs on the 22d or 23d, but that they still held the cotton on the 22d and 23d ready and willing to deliver it.

The defendants were allowed to prove, over the objection of plaintiffs, that the market price of cotton at Enterprise, Ala., on November 24, 1899, at 10:20 A. M. was $6\frac{7}{8}$ cents per pound. The evidence further tended to show that it did not rain at Enterprise prior to 1 o'clock in the afternoon of that day.

On cross-examination, defendant's evidence further tended to show that they could not positively say that all of the cotton was turned out ready to be weighed on the 21st; that it was ordered out, and that a part of it was seen turned out; and that the warehouse had reported that all of the cotton was ready to be delivered when they wired Beale. On cross-examination plaintiffs asked J. E. Henderson when on the stand as a witness for the defendants, who had testified that cotton was worth $6\frac{7}{8}$ cents per pound at Enterprise at 10:20 A. M. on the 24th of November, if he did not offer to sell said lot of cotton to Inman & Co. on that day for $7\frac{1}{8}$ cents, and demand that price for the same. The court refused to allow this question to be answered, and the plaintiffs excepted. It was further shown that the cotton was not classed nor weighed up to November 24th.

Upon the introduction of all the evidence, the plaintiffs requested the court to give to the jury the following written charge: "If the jury believe the evidence, they will find for the plaintiffs." The court refused to give this charge, and the plaintiffs duly excepted.

[McFadden & Bro. v. Henderson *et al.*]

At the request of the defendants, the court gave the general affirmative charge in their behalf, and to the giving of this charge the plaintiffs duly excepted.

There were verdict and judgment for the defendants. The plaintiffs appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

HARMON, DENT & WEIL, for appellants.—The contract being made by an agent for the principals' benefit, the latter can sue on it in their own name.—*Bell v Reynolds*, 78 Ala. 511; *City of Huntsville v. Huntsville Gaslight Co.*, 70 Ala. 190, 198.

The contract sued on is in writing, and the parol explanation of the ambiguities is not disputed; its construction, therefore, is purely a legal question.—*Barnhill v. Howard*, 104 Ala. 416.

Courts construe contracts to be unconditional rather than conditional; therefore, the telegram of defendants, "Fifteen hundred bales of cotton is yours; come at once," was an unconditional acceptance of plaintiffs' offer, and the words "come at once" must be held to mean simply a request.—*Cross v. Scruggs*, 115 Ala. 258; Tiedeman on Sales, § 208; 2 Schouler on Personal Property, § 289.

There being no time fixed by the contract for its performance, the law fixes it at a reasonable time; and what is such time in this case is a question for the court, the facts being undisputed and the contract in writing.—*American &c. Co. v. Ryan*, 104 Ala. 267; *Comer v. Way*, 107 Ala. 300; *Cotton v. Cotton*, 75 Ala. 345; *Griffith v. Ogletree*, 114 Ala. 343; 2 Parsons on Contracts (1st ed.), 600, 660.

If the language in the telegram, "come at once," attached a condition to the acceptance, then the contract was not binding until accepted upon these terms. *Hart v. Bray*, 50 Ala. 447; *Strong v. Catling*, 35 Ala. 607; 7 Am. & Eng. Encyc. (2d ed.), 131, 132.

The words "as soon as possible" mean within a reasonable time, or what is practically the same thing, within such time as would be reasonably necessary to do the thing required.—*Florence v. Hanby*, 101

Ala. 15; *Failes v. McRec,* 36 Ala. 67; *Bonifay v. Hassell,* 100 Ala. 269; Tiedeman on Sales, § 100.

A stipulation of time in a contract of sale is not held to be a condition unless it is shown to have been fairly understood by the parties to be an essential element in the performance of the contract, and the courts lean to the construction, in the absence of positive proof to the contrary, that the stipulation is not a condition; its breach, therefore, does not justify the refusal of performance at a later time, but simply gives the other party his action for a breach of the stipulation.—Benj. on Sales (7th ed.), § 700; Tiedeman on Sales, § 208; 2 Schouler on Personal Property, § 289; Story on Sales, § 310. An unreasonable delay will justify a rescission if notice to comply is given, and performance not made within a reasonable time after such notice.—Story on Sales, § 310; *Benson v. Lamb,* 9 Beavans, 502; 21 Amer. & Eng. Encyc. 56, n. 57; *Kearney v. Newberry,* 24 Ill. 203; Benj. on Sales, (7th ed.), 678; 74 Amer. Dec. 658, note where authorities are collated; note 50 Amer. Dec. 678.

Even if time were of the essence, and the cotton to be delivered at once, defendants waived an immediate acceptance by treating the contract as binding until the 24th, when plaintiffs called for the cotton.—21 Amer. & Eng. Encyc. (1st ed.), 77-9. A party who is himself at fault, or not ready to perform his part of the contract, has no right to rescind.—21 Amer. & Eng. Encyc. of Law (1st ed.), 77, and authorities; Tiedeman on Sales, § 205.

The question propounded on cross-examination to the witness, J. E. Henderson, when on the stand, in behalf of defendants, as to what he sold or offered to sell this cotton for, at or about the time he refused to deliver, called for competent testimony as to the value of the cotton at that time.—*Buist v. Guice,* 105 Ala. 518.

The ordinary rule for the measure of damages in a case of breach of contract to deliver personal property, is the difference between the contract price and the market value at the time and place of delivery. *Bell v. Reynolds,* 78 Ala. 511.

[McFadden & Bro. v. Henderson *et al.*]

The measure of damages in this case was the excess cost of replacing the cotton after refusal to deliver, over the contract price when repurchased as cheaply and expeditiously as possible.—*Watson v. Kirby,* 112 Ala. 436; *Bell v. Reynolds, supra; Haskell v. Hunter,* 23 Mich. 305; 2 Schouler's Per. Prop., § 572.

FOSTER, SAMFORD & CARROLL, *contra.*—In a contract for the sale of chattels and not of real estate, the rule is essentially different with regard to immediate compliance. In an executory contract for the sale of chattels time is always of the essence of the contract. A lapse of a few hours may bring about an entire change of circumstances or of price, and this is particularly so with respect to articles of a fluctuating character, and by those who deal in such articles.—Benjamin on Sales, § 1024, note 12; *Clark v. Wright,* 5 Philadelphia, 439.

Directly or as soon as possible require a more speedy performance than a reasonable time.—Addison on Contracts, § 1188; 2 Benjamin on Sales, § 1027; *Berry v. Hall,* 54 Ala. 450; *Sentence v. Kelley,* 59 Hun. 512; Century Digest, "Contracts," § 967 "C."

We do not contend that the plaintiffs should have performed the contract as soon as it was physically possible by the aid of every means promotive of expedition. But, we contend, that they should have complied within such time as would have brought about its accomplishment by reasonable investment and effort. *Fails v. McRee,* 36 Ala. 769.

HARALSON, J.—There is no dispute but that the contract having been made by the agent of plaintiffs, for their benefit, they may sue on it, though their names were not disclosed in the transaction.—*Bell v. Reynolds,* 78 Ala. 511; *City of Huntsville v. H. Gas Co.,* 70 Ala. 191.

When the terms and conditions of a contract are certain, its construction is a question for the court and not for the jury.—*Barnhill v. Howard,* 104 Ala. 412; *Foley v. Felrath,* 98 Ala. 176.

In construing contracts, courts lean to that construction which will make them unconditional rather than

conditional, unless it be shown to have been fairly
understood by the parties that the stipulation relied on
to show its conditional character, is an essential ele-
ment in the performance of the contract.—Tiedeman on
Sales, § 208; *Grass v. Scruggs,* 115 Ala. 258.

In the contracts of merchants, generally, time is of
the essence; and "a statement descriptive of the sub-
ject-matter, or of some material incident, such as the
time or place of shipment, is ordinarily to be regarded
as a warranty, in the sense in which that term is used
in insurance and maritime law, that is to say, a condi-
tion precedent, upon the failure or non-performance of
which the party aggrieved may repudiate the whole
contract."—*Norrington v. Wright,* 115 U. S. 188, 203,
and authorities there cited.

As to time when delivery of goods sold should
be made, Mr. Story says: "If any time be agreed upon.
and the vendor fails to comply with the agreement, the
vendee will not be bound to accept, if a compliance with
the terms in respect of the time be an essential consid-
eration of the bargain. * * * Time is not, however,
ordinarily deemed to go to the essence of a contract,
unless it is so expressly treated by the parties, or,
unless it naturally follows from the circumstances of
the case."—Story on Sales, § 310.

Addison on the same subject observes: "If the time
appointed for delivery or payment is not of the es-
sence of the contract, the delivery and payment must
be made within a reasonable time after notice and re-
quest of performance; and if no time at all has been
appointed for the performance of these acts, the vendor
is bound to deliver within a reasonable period after re-
quest and tender of the price, and the purchaser must
in like manner accept the goods and pay for them
on delivery, or offer of delivery being made by the ven-
dor; and if the contract is not sought to be carried into
effect within a reasonable period, either on the part of
the vendor or the purchaser, it is deemed to be dis-
solved and abandoned by mutual consent."—Addison on
Contracts, § 578.

What is a reasonable time for the performance of
the contract, when time is not of its essence, is to be

determined by all the circumstances of each case, and is a question of law.—*Ib;* 2 Parsons on Contracts, 775 § 661; *Adams v. Adams,* 26 Ala. 272; *Fail v. McRee,* 36 Ala. 61; *Cotton v. Cotton,* 75 Ala. 345; *Am. O. Ex. Co. v. Ryan,* 104 Ala. 267, 274; *Comer v. Way,* 107 Ala. 391; *Griffin v. Ogletree,* 114 Ala. 344.

In the case in hand, the contract was in writing, and had respect, as the evidence showed, to 1,500 bales of cotton, that defendants owned and were proposing to sell the plaintiffs. The offer to purchase was, we "offer six seven-eights f. o. b. round nothing below low middlings." The words, "six seven-eights," were shown to mean six and seven-eights cents per pound; the letters "f. o. b." "free on board cars without cost to the purchaser," and the word "round," "taking the lot as it is, without the low middlings; taking all the cotton in the lot, 1,500 bales, leaving out everything that classes below low middlings, without the unmerchantable cotton, and does not include sandy, seedy, or false packed cotton."

The general rule to determine whether a contract of sale is executed or executory is, "If anything remains to be done by either party to the transaction before delivery, as, for example, to determine the price, quantity or identity of the thing sold, the title does not vest in the purchaser, and the contract is merely executory. If the sale is complete, and the goods perish without the fault of the seller, the purchaser is bound to pay the agreed price."—*Foley v. Felrath,* 98 Ala. 176.

In this case, the number of bales out of the lot of 1,500, that were sold was not determined, for the number that would class low middlings and under, and how many were unmerchantable as being "sandy, seedy or false packed," was unascertained and could not have been known until the cotton was turned out and classed, which remained, under the terms of sale, to be done, and which was never done. The sale was, therefore, executory and not executed.—*Foley v. Felrath,* 98 Ala. *supra; Mobile Savings Bank v. Fry,* 69 Ala. 348; *Fry v. M. S. Bank,* 75 Ala. 473; *Warten v. Strane,* 82 Ala. 311.

[McFadden & Bro. v. Henderson *et al.*]

The reply of the defendants to the plaintiff's agent, accepting the proposition of purchase was, "Fifteen hundred bales of cotton is yours come at once, we want the money out of it and the insurance stopped." This was an unconditional acceptance of the offer of puchase as made. The words, "come at once, we want the money out of it," etc., did not attach a condition to the sale, and the defendants do not so contend, but were added by way of request, and to imply that it was important to defendants for the transaction to be fully consummated, at as early a time as practicable, or "as soon as possible." These latter words have been construed by us to mean within a reasonable time, or within such time as is reasonably necessary, under the circumstances, to do what the contract required to be done.—*Florence G. E. L. & P. Co. v. Hanby,* 101 Ala. 16; *Bonifay v. Hassell,* 100 Ala. 269; *Fail v. McRee,* 36 Ala. 67-8.

No time was specified in the contract within which the cotton was to be delivered, and under the rules to which we have referred, no time, under the terms of the contract, for the delivery of the cotton sold, was of its essence. The only obligation, therefore, on the vendor and the purchaser was that each should perform his part in the consummation of the bargain within a reasonable time. The sellers, acting under this construction of their contract, by their telegrams indicated their willingness to perform it up to the 24th November, when at 10:20 o'clock A. M. of that date they wired Beale, the agent of plaintiffs, "You have no cotton with us." The plaintiffs, to this time, had not repudiated their contract, or indicated a purpose to do so. On the other hand, they had, on the 20th November, wired defendants to order the cotton out at once, unless it rained, and that a man would be down as soon as possible; and, again, on the 21st, that the agent would come down as soon as their weigher arrives there. On the morning of the 24th, Beale telegraphed: "Sorry to disappoint you; impossible to come; have not finished shipping here," and at 10:50 A. M. of the same day, he telegraphed to defendant again: "We

expect to begin receiving cotton to-morrow sure;" and still again, on same day: "Since wiring you this morning, have wire from Montgomery that weigher and crew be down on to-night's train." The main office of plaintiffs and their headquarters were at Montgomery.

The defendants, under these circumstances, had no right of peremptory abandonment and rescission of the contract. The plaintiffs, in the absence of fault on the part of defendants, were bound by, and could not recede from their bargain, nor could the defendants do so, without putting plaintiffs in default. In *Monroe v. Reynolds,* 47 Barb. (N. Y.), 579, it is held, that in all cases where time is not necessarily of the essence of the contract, the seller, "if he wishes to have the contract either performed or abandoned, must go further, and by some demand, offer on his part or notice, put the purchaser to a refusal to perform, before he can treat the contract as having been rescinded by the purchaser. Mere neglect to perform by the day, generally, is not sufficient." To the same effect is *Carney v. Newberry,* 24 Ill. 203. In *Higby v. Whittaker,* 8 Ohio, 201, which had reference to the rescission of a sale of land, it was said: "The law requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and then give a reasonable time to comply; but it requires eagerness, promptitude, ability and disposition to perform, by him who would resist a rescission of his contract."

In an extended note to *Bryant v. Isburgh,* (13 Gray, 607), in 74 Am. Dec. 655, Mr. Freeman discusses the question of rescission of contracts, whether of the sale of goods or of land, and on review of the authorities, states: "Where one party relies on the fact that the contract has been rescinded on his part, as a defense to an action on the contract, or on some right arising therefrom, where the rescission is not by mutual consent, he must show that some notice of the rescission was brought home to the opposite party.—*Carney v. Newberry,* 24 Ill. 203; *Higby v. Whittaker,* 8 Ohio, 201. A rescission may be effected by word or direct notice, or by any act of either party which prevents performance

of the mutual understanding.—*Suber v. Pullin,* 1 S. C. 273. A formal written notice is not necessary, but the law requires, on the part of him who would rescind, some positive act which shows such intention, and puts the opposite party on his guard, so as to give him a reasonable time to comply with his agreement.—*Mullin v. Bloomer,* 11 Iowa, 360; *Hooper v. Taylor,* 4 E. D. Smith, 486." The same learned annotator had discussed the question previously, and to the same effect, with citations of many authorities, in his notes to *Johnson v. Evans,* (8 Gill. 155), in 50 Am. Dec. 669.

The only notice, if any, that defendants gave plaintiffs to rescind as appears, was contained in their letter to them, of date 21st of November, where they say: "We expect you to-morrow morning without fail to commence receiving cotton. We are ready to deliver"; and in the one of the 22d November, saying: "We were disappointed that you did not show up here on arrival of train this morning. It costs big money to carry 1,500 bales of cotton, and we want to deliver it and get our money out of it. Will certainly expect you to-morrow morning to get to work on it. Don't fail to come." The next notice was on the 24th November, at 10:20, to the plaintiff's agent, Beale, at Elba, by wire, stating: "You have no cotton with us."

We are indisposed, under these facts, to hold this was such a notice of rescission as defendants were required to give, if it was their purpose and they intended to rescind, the plaintiffs having done nor said anything to indicate a purpose on their part not to abide their contract. Indeed, they offered to prove, which the court would not allow, that they sold 1,500 bales of cotton, after their purchase of that number from defendants, and that after being notified of defendants' refusal to deliver the cotton, they replaced this 1,500 bales; and on the day that defendants notified them of their refusal to deliver, they sent two or three telegrams to defendants of their purpose to come, that day, and receive the cotton. The plaintiffs were bound by their contract, if the goods had fallen in price, and the fact that the price of cotton had

risen after the sale, as the evidence tended to show, furnished no excuse for repudiating the contract by defendants. Plaintiffs were entitled to a reasonable time to comply with their contract, and of defendants' notice to comply, which under the evidence they did not have, before defendants could rightfully rescind the contract. The court erred in giving the general charge for the defendants.

The only remaining questions have reference to the proof of damages by plaintiffs. In *Bell v. Reynolds,* 78 Ala. 511, the rule is stated to be, "that in ordinary cases, when the vendor has failed and refused to deliver to the purchaser goods sold, the measure of damages for the breach of the contract, if the price has not been paid, is the difference between the agreed price and the market price of the goods at the time and place of delivery, with interest.—2 Addison on Contr., § 589. This is upon the principle that the purchaser can readily go into the market and supply himself with the desired goods, by paying the difference in price. When this cannot be done, the reason of the rule ceases, and the rule itself can, therefore, have no application.—*McHose v. Fulmer,* 73 Penn. St. 365;" *Ala. I. Works v. Hurley,* 86 Ala. 217. As tending to show the value of the cotton at the time of delivery, the court very properly allowed the plaintiff to prove its market value that day in Enterprise. In *Watson v. Kirby,* 112 Ala. 436, 444, it was said, touching the damages to be allowed for a failure to deliver chattels sold, "If there was non-delivery, or delay in delivery, of the logs or any of them, by the fault of the plaintiff, not waived by the defendants, and defendants aver and prove that at the time they ought to have been delivered, they were ready and able to receive and pay for the same, the plaintiff thereby became liable to the defendants for such damages as they proximately sustained by the non-delivery or delay.   *   *   * If it was practicable for defendants to obtain logs elsewhere to take the place of those due from the plaintiff, it was their duty to do so as expeditiously and cheaply as they reasonably could, and hold the plaintiff responsible, if he was at fault, for the excess of

[Dudley v. Gallups.]

costs over the contract price of plaintiff's logs, and such reasonable expense and loss as were necessarily incurred in procuring them."—*Clements v. Beatty,* 87 Ala. 238; *Johnson v. Allen,* 78 Ala. 387; Schouler Per. Prop., § 572.

The proof proposed by plaintiffs, that after being notified by defendants of their refusal to deliver the cotton, they went into the market and purchased 1,500 bales as quickly and cheaply as they could at a loss of two dollars a bale, as tending to show their damages, should have been allowed. It was shown that they could not buy the cotton in Enterprise.

From what has been said, without passing on all the errors assigned as to the rulings on the question of damages, the case may be readily and properly disposed of on another trial.

Reversed and remanded.